IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL CHICKEN COUNCIL, *et al.*, | § |
| *Plaintiffs*, | § |
| vs. | § |
| | § No. 4:24-cv-03786 |
| BROOKE ROLLINS, in her official capacity as SECRETARY OF AGRICULTURE, *et al.*, | § Judge Andrew Hanen |
| *Defendants*, | § |
| and | § |
| RANCHERS CATTLEMEN ACTION LEGAL FUND UNITED STOCKGROWERS OF AMERICA, WESTERN ORGANIZATION OF RESOURCE COUNCILS, ALABAMA CONTRACT POULTRY GROWERS ASSOCIATION, AND LATINO FARMERS AND RANCHERS INTERNATIONAL, | § |
| *Proposed Defendant-Intervenors* | § |

**FARMER AND RANCHER ORGANIZATIONS' MOTION TO INTERVENE AS DEFENDANTS**

Ranchers Cattlemen Action Legal Fund United Stockgrowers of America, Western Organization of Resource Councils, Alabama Contract Poultry Growers Association, and Latino Farmers and Ranchers International (together, "Farmer and Rancher Organizations"), respectfully

1

move for leave to intervene as of right under Federal Rule of Civil Procedure 24(a), or alternatively, for permissive intervention under Rule 24(b). A proposed answer is attached as Exhibit A. Counsel for Farmer and Rancher Organizations contacted counsel for Plaintiffs and Government Defendants and were informed that they intend to oppose this Motion.

This case, filed by the National Chicken Council, Meat Institute, Southwest Meat Association, and Texas Broiler Council (together, "Plaintiffs"), challenges a United States Department of Agriculture ("USDA") regulation entitled *Inclusive Competition and Market Integrity under the Packers and Stockyards Act*, 89 Fed. Reg. 16,092 (Mar. 6, 2024) (codified at 9 C.F.R. pt. 201) ("the Rule"). The Rule aims to protect farmers and ranchers that raise and sell livestock and poultry from discriminatory, retaliatory, and deceptive conduct that currently pervades livestock and live poultry markets, resulting in widespread harm to hardworking family farmers. Farmer and Rancher Organizations are nonprofit membership organizations with missions to serve and protect the interests of farming families by improving their market access and economic opportunities. Because movants have a significant stake in this case and satisfy the Rule 24 standards for both intervention as of right and permissive intervention, as explained in the following Memorandum in Support, the Court should grant this Motion to Intervene.

## BACKGROUND

### I. The Packers and Stockyards Act Was Enacted to Protect Farmers and Ranchers

Congress enacted the Packers and Stockyards Act in 1921 to accomplish two related but independent objectives: protect farmers and ranchers from meatpacking monopolies that were subjecting them to unfair, deceptive, and discriminatory treatment that harmed their individual

2

economic opportunities, and also to rein in the broader market harms the "Big Five"[1] were causing to producers and consumers through their anticompetitive practices. H.R. Rep. No. 85-1048, at 1–2 (1957) (describing the purpose of the Act as "assur[ing] fair competition *and fair trade practices* in livestock marketing and in the meatpacking industry," "safeguard[ing] farmers and ranchers against receiving less than the true market value of their livestock," and protecting "members of the livestock marketing and meat industries from unfair, deceptive, unjustly discriminatory, and monopolistic practices of competitors, large or small." (emphasis added)); *see also Fair and Competitive Livestock and Poultry Markets*, 89 Fed. Reg. 53,886, 53,889 (June 28, 2024) (describing the "Big Five" meatpackers). To that end and in recognition that existing antitrust law was insufficient to address the unique challenges of the meatpacking industry, Congress "[gave] the Secretary of Agriculture complete inquisitorial, visitorial, supervisory, and regulatory power over the packers, stockyards, and all activities connected therewith," including the power to "prevent abuses" and "redress [] *any* unfair practices or abuses" within the livestock sector. H.R. Rep. No. 67–77, at 2 (1921) (emphasis added).

    The Act enumerates seven specific prohibitions aimed at addressing abuses in livestock and poultry markets and maltreatment of producers. Section 202 makes it unlawful for packers, swine contractors, and live poultry dealers to:

(a) Engage in or use "any unfair, unjustly discriminatory, or deceptive practice or device";

(b) Make or give "any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect";

---

[1] The "Big Five" meatpacking corporations were Swift & Company, Armour & Company, Cudahy Packing Company, Wilson & Company, and Morris & Company.

    (c) Sell, transfer, purchase, or receive goods "for the purpose or with the effect of apportioning the supply" if such apportionment has "the tendence or effect of restraining commerce or creating a monopoly;"

    (d) Sell, transfer, purchase, or receive goods "for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly . . . or of restraining commerce";

    (e) "Engage in any course of business or do any act for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly . . . or of restraining commerce";

    (f) Conspire, combine, agree, or arrange to apportion territory or sales, or manipulate or control prices; or

    (g) Conspire, combine, agree, or arrange with any other person to do, or aid or abet the doing of, any act made unlawful by subdivisions (a), (b), (c), (d), or (e).

7 U.S.C. § 192(a)–(g). In passing these prohibitions, not only did Congress intend to exercise "the fullest control of the packers and stockyards which the Constitution permits," H.R. Rep. No. 67-324, at 3 (1921), but also "to halt unfair trade practices in their incipiency, before harm has been suffered." *IBP, Inc. v. Glickman*, 187 F.3d 974, 977 (8th Cir. 1999) (quoting *Farrow v. USDA*, 760 F.2d 211, 215 (8th Cir. 1985)). It tasked USDA with carrying out this mandate by expressly delegating the agency the authority to "make such rules, regulations, and orders as may be necessary to carry out the provisions of [the Act]," and empowering the agency to engage in other investigatory, adjudicatory, and regulatory activities. 7 U.S.C. §§ 227–228(a).

    Exercising this authority, USDA promulgated the at-issue Rule to define, clarify, and give effect to the statutory text by prohibiting specific conduct as "unjustly discriminatory, or deceptive practice[s] or device[s]" and/or "undue or unreasonable prejudice[s] or disadvantage[s]." *See* 89 Fed. Reg. at 16,112; 7 U.S.C. § 192(a)–(b). Based on an expansive record apparently spanning more than 250,000 pages, *see* Defendants' Unopposed Motion for Leave to File Index of the Administrative Record, Dkt. No. 34, at 1, the Rule prohibits the adverse treatment of farmers and

ranchers based on their race, color, national origin, sex, disability, marital status, age, or status as a cooperative as constituting unjust discrimination under the Act. 9 C.F.R. § 201.304(a) (2024). The Rule also prohibits packers from retaliating against farmers and ranchers for engaging in protected business activities, including communicating with the government for redress of grievances regarding abuses experienced in the course of their business operations, asserting their contractual or Packers and Stockyards Act rights, participating in associations and cooperatives, and exploring other business relationships. *Id.* § 201.304(b). Finally, the Rule prohibits packers from using false or misleading statements or omitting material information when forming, performing under, or terminating contracts with farmers or ranchers, or in refusing to contract with the same. *Id.* § 201.306. USDA concluded that the above protections were critical and necessary to achieving the Act's dual goals of stopping pervasive abuse of farmers and ranchers and halting broader market harms in their incipiency, just as Congress instructed. 89 Fed. Reg. at 16,118; *IBP, Inc.*, 187 F.3d at 977; *Bowman v. USDA*, 363 F.2d 81, 85 (5th Cir. 1966) ("[T]he Act is designed to '. . . prevent potential injury by stopping unlawful practices in their incipiency.'" (quoting *Daniels v. United States*, 242 F.2d 39, 42 (7th Cir. 1957)).

## II. Interests of Farmer and Rancher Organizations

Farmer and Rancher Organizations give voice to and advance the interests of livestock and poultry producers across the United States. They represent the family famers that are the backbone of America's food system – independent cattle ranchers, "contract growers" (farmers that raise hogs or poultry under specific and detailed contracts), small and medium sized feedlots, and the few remaining independent processors. Recognizing that Congress understood their members' plight by enacting the Packers and Stockyards Act and its amendments to protect family farms from the very abuse that is now commonplace in livestock and poultry markets in the modern era

5

of extreme consolidation, they advocate for better Packers and Stockyards Act protections for their farmer and rancher members, including during promulgation of the Rule challenged here. *See* Declaration of Bill Bullard ("Bullard Decl.") ¶¶ 18–25; Declaration of Sara Kendall ("Kendall Decl.") ¶¶ 7–8. In short, Farmer and Rancher Organizations represent thousands of independent producers that the Act and the Rule are designed to protect.

Ranchers Cattlemen Action Legal Fund United Stockgrowers of America ("R-CALF") is the largest producer-only cattle trade association in the United States. R-CALF represents producers across forty-two states in trade and marketing issues to ensure the continued profitability and viability of independent U.S. cattle and sheep producers. For years, R-CALF has engaged in legal and policy efforts to eliminate fundamentally unfair trade practices from livestock markets and rebalance the disparate bargaining positions between livestock producers and highly concentrated meatpackers. R-CALF has advanced this goal by advocating for stronger regulation under and enforcement of the Packers and Stockyards Act to promote fairness and competition for the benefit of livestock producers, growers, and consumers, and protect independent producers from packers' abusive market conduct. *See* Bullard Decl. ¶¶ 4, 6, 18.

Western Organization of Resource Councils ("WORC") is a network of grassroots organizations working to protect and support family farms and sustainable agriculture, land and water resources, and civic engagement. WORC's members include farmers, ranchers, and small business owners across numerous states and tribal reservations. WORC's mission is to advance the vision of a democratic, sustainable, and just society through community action and policy advocacy, and it is committed to building sustainable environmental and economic communities that balance economic growth with the health of people and stewardship of their land and environmental resources. This includes advocating for common-sense reform in livestock markets

and rural economic development, including decades of advocacy related to strengthening Packers and Stockyards Act protections for livestock and poultry producers. Kendall Decl. ¶¶ 4–5, 7.

Alabama Contract Poultry Growers Association (the "Association") is a membership-based, 501(c)(5) tax-exempt Agricultural Marketing Association founded in 1992 to work for fair treatment and better contracts for contract poultry growers. The Association's mission is to make the poultry industry stronger, more efficient, and more economical by representing the interests of poultry producers throughout Alabama, providing members with benefits to assist in their poultry growing efforts, and speaking out publicly about the unfair and abusive treatment that contract growers suffer at the hands of powerful poultry processing companies. Declaration of Jonathan Buttram ("Buttram Decl.") ¶¶ 3–6.

Latino Farmers and Ranchers International ("LFRI") is a network of multi-ethnic, small to medium sized farmers and ranchers that come together in collaboration with other farmer and rancher organizations nationwide. The organization's mission is to assist and advocate for farmers and ranchers that have been historically discriminated against. To accomplish this, LFRI works in rural communities across the United States and beyond to organize, educate, and empower its members by connecting them with the resources and opportunities they need to thrive. Declaration of Rudy Arredondo ("Arredondo Decl.") ¶¶ 4–5.

## STATEMENT OF THE ISSUE TO BE RULED UPON

The issue before the Court is whether Farmer and Rancher Organizations meet the standard for intervention as of right, or alternatively, the standard for permissive intervention into this matter. Because Farmer and Rancher Organizations satisfy the standards of both intervention as of right and permissive intervention, the Court should grant this Motion to Intervene.

//

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this action on October 4, 2024, challenging USDA's issuance of the Rule under the Administrative Procedure Act and seeking an order vacating the Rule and enjoining its enforcement. *See* Complaint, Dkt. No. 1. On January 6, 2025, the Court suspended Government Defendants' deadline to file an Answer to the Complaint and, finding discovery unwarranted in this administrative record case, set a summary judgment briefing schedule. Dkt. No. 30. On February 10, 2025, and before briefing began, Government Defendants filed a motion to stay briefing so that they could "evaluate their position in this case and determine how best to proceed" in light of new policy directives. Dkt. No. 32 at 1. The Court granted Government Defendants' request and ordered the parties to file a joint status report by April 11, 2025, addressing how they would like to proceed. Dkt. No. 36.

## SUMMARY OF ARGUMENT

Farmer and Rancher Organizations respectfully request the Court grant their intervention because they meet the requirements for intervention as of right under Rule 24(a), or, in the alternative, should be allowed permissive intervention under Rule 24(b). Farmer and Rancher Organizations satisfy Rule 24(a) because: the Motion is timely, filed before any merits briefing or even responsive pleadings from Government Defendants; they have a sufficient interest because, among other reasons, they are the "intended beneficiaries of the challenged federal policy," *Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015); their interest would be impaired by the stare decisis effect of an adverse judgment vacating the Rule's protections; and their interests are not adequately represented by an existing party because, among other reasons, they are narrower than Government Defendants' interests and the Government's request for a stay calls into question whether it will defend the Rule. Thus, Farmer and Rancher Organizations meet the requirements

of intervention as of right. If the Court finds otherwise, Farmer and Rancher Organizations should be allowed permissive intervention because their motion is timely and their involvement will not unduly delay or prejudice the rights of existing parties. Conversely, excluding farmers and ranchers from this case that could strip them of critical protections would be unjust.

## ARGUMENT

### I. FARMER AND RANCHER ORGANIZATIONS SATISFY THE REQUIREMENTS TO INTERVENE AS OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Fifth Circuit interprets Rule 24(a) as establishing four elements for intervention as of right: (1) the application is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the disposition of that case may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the existing parties to the suit. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Generally, intervention does not require a party to establish Article III standing, but it may be required when an intervenor seeks "relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.* 581 U.S. 433, 440 (2017). The Fifth Circuit has explained this Rule "is to be liberally construed" and courts "should allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart*, 834 F.3d. at 565.

//

//

### A. The Motion Is Timely

Courts consider four factors when determining whether a motion to intervene is timely: (1) the length of time the intervenor knew of its interest in the case; (2) the extent of prejudice against the existing parties caused by any delay on intervenor's part; (3) the extent of prejudice against the intervenor if denied intervention; and (4) unusual circumstances that militate for or against whether the motion was timely. *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019). The Fifth Circuit has further clarified that the first timeliness factor should be judged by "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

Here, this motion is timely under all four factors. On the first, Farmer and Rancher Organizations promptly filed this Motion less than two months after USDA's February 10, 2025, filing seeking a stay in briefing to reevaluate its position on defending the Rule. This was Farmer and Rancher Organizations' first clear indication that USDA may not intend to protect their interests. *See* Dkt. No. 32*; see also Espy*, 18 F.3d at 1206 (finding motion timely when made within two months of becoming aware that interests were affected); *Edwards v. City of Houston*, 78 F.3d 983, 1000–01 (5th Cir. 1996) (collecting cases). Second, existing parties will experience no prejudice due to delay because intervention will not cause any delay in the case. Farmer and Rancher Organizations agree with the parties and Magistrate Judge Ho's finding that no discovery is warranted in this administrative record case. *See* Order Setting Briefing Schedule, Dkt. No. 30. Since no discovery is warranted, intervention will not delay proceedings by seeking discovery. Moreover, movants will abide by any future summary judgment briefing schedule the Court may set following the parties' April 11, 2025, joint status report. As to the third factor, Farmer and Rancher Organizations will suffer severe prejudice if denied the opportunity to intervene because

10

the litigation seeks to undo their advocacy and strip their members of critical economic protections under the Packers and Stockyards Act. *See Espy*, 18 F.3d at 1207 (finding intervenors with "economic interests" affected by litigation would be prejudiced if denied the opportunity to intervene). Finally, no "unusual circumstances" exist that would counsel against intervention. For these reasons, this motion is timely.

### B. Farmers and Ranchers Have a Protectable Interest Related to This Case

To determine whether an intervenor has a sufficient interest related to the controversy, the "touchstone of the inquiry is whether the interest alleged is 'legally protectable.'" *Wal-Mart*, 834 F.3d at 566. "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United* States, 805 F.3d 653, 659 (5th Cir. 2015).[2]

It is well-established in this Circuit that the intended beneficiaries of a government regulation possess a legally protectable interest sufficient to intervene and defend against a challenge to that regulation. *See, e.g.*, *Wal-Mart*, 834 F.3d at 566 (trade association had interest justifying intervention where it sought to defend the regulatory scheme governing its members); *Texas*, 805 F.3d at 659 ("intended beneficiaries of the challenged federal policy" had a sufficient interest to intervene); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (farm group had sufficient interest to intervene in defense of USDA action benefiting its members). Farmer and Rancher Organizations' members are the direct beneficiaries of the challenged Rule, which aims to protect them against certain discriminatory, retaliatory, and deceptive conduct that impairs the livestock and poultry markets in which they participate. Bullard Decl. ¶¶ 11–17, 26–27 (explaining

---

[2] Here, as explained below, Farmer and Rancher Organizations have standing and thus plainly have a legally protectable interest at stake. *Wal-Mart*, 834 F.3d at 566 n.3 ("We have previously suggested that 'a movant who shows standing is deemed to have a sufficiently substantial interest to intervene.'").

11

how the Rule protects its members from unfair and abusive treatment); Arredondo Decl. ¶¶ 14–18 (discussing how Rule's prohibition against discrimination protects its members and constituents); Buttram Decl. ¶¶ 5, 17–18 (describing deceptive and retaliatory practices experienced by poultry grower members now prohibited by Rule); Kendall Decl. ¶¶ 9–16 (discussing critical protections Rule provides to members). Movants, thus, possess a legally protectable interest more than sufficient to justify intervention here.

Additionally, Farmer and Rancher Organizations have a long history of advocating for stronger Packers and Stockyard Act protections for their members, including by engaging in the rulemaking process for the challenged Rule, which further underscores their interest in upholding a Rule that represents the culmination of their efforts. Where intervenor organizations played a role in securing the very regulation they now seek to defend, they "demonstrate[] a particular interest in cementing their [] victory." *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). Farmer and Rancher Organizations have been working for decades to revitalize the Packers and Stockyards Act through better enforcement and regulation. For example, these groups have a thirty-year history of engaging with USDA to secure meaningful regulatory protections against unfair, discriminatory, and deceptive practices prohibited by the Packers and Stockyards Act and strengthen their members' ability to vindicate those rights through private enforcement actions. *See* Bullard Decl. ¶¶ 18–25; Buttram Decl. ¶ 6; Kendall Decl. ¶¶ 7–8.

Moreover, Farmer and Rancher Organizations' advocacy efforts with respect to the Rule at issue directly impacted the USDA's decision-making process, resulting in measurable improvements between the proposed and final versions of the regulatory text. For instance, USDA explicitly credited public comments submitted by proposed-intervenors R-CALF and WORC, among others, as the impetus for expanding the Rule's protections against retaliation in response

to communicating, negotiating, or contracting with a regulated entity, another covered producer, or with a commercial entity or consultant for the purpose of exploring or entering into a business relationship. *See* 89 Fed. Reg. at 16,116, n.98. The agency also adopted their recommendation to add a "catch-all" provision prohibiting other retaliatory actions not specifically enumerated in the Rule. *See id.* at 16,116–17. Accordingly, Farmer and Rancher Organizations have a special interest in defending their gains during the regulatory process. *See City of Houston*, 668 F.3d at 294.

### C. This Case's Disposition May Impair Farmer and Rancher Organizations' Interests

The Fifth Circuit has held that "the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Glickman*, 82 F.3d at 109–10. This is true here. An adverse resolution of this action would hamper Farmer and Rancher Organizations' members' ability to assert the protections conferred by the Rule, and thus substantially impair their ability to vindicate their rights under the Packers and Stockyards Act.

### D. Existing Parties May Not Adequately Represent Farmer and Rancher Interests

An intervenor must show that its "interests are not adequately represented by [an existing party]." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022). However, this requirement is "minimal," because an intervenor "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *Id.* at 307–08 (quoting *Texas*, 805 F.3d at 661). Nevertheless, the Fifth Circuit has created two presumptions of adequate representation that intervenors must overcome when applicable: (1) when "the would-be intervenor has the same ultimate objective as a party to the lawsuit," and (2) when "the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Edwards*, 78 F.3d at 1005.[3] Both of these presumptions can be overcome by a

---

[3] This second presumption is not applicable here, because the Fifth Circuit has clarified that its application is limited to litigation focused on matters of sovereign interest, which are not at issue

13

showing of "adversity of interest." *Id.; see also Texas*, 805 F.3d at 662 ("In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case.").

Though the Government has yet to file a responsive pleading or merits brief articulating its objective or arguments, its recent request to stay briefing indicates that it may not share intervenors' interest in vigorously defending the Rule. In February, Government Defendants filed a consent motion to stay briefing so that they could "evaluate their position in this case and determine how best to proceed" in light of the Executive Order entitled *Ending Radical and Wasteful Government DEI Programs and Preference*, which directs agencies to "recommend actions . . . to align agency or department programs, . . . regulations, . . . and litigating positions with the policy of equal dignity and respect." *See* Dkt No. 32, at 1. That the Government is contemplating a change of course in response to this Executive Order—indeed that it suggests this Rule falls within its scope, a point on which Farmer and Rancher Organizations would not agree— strongly signals it may not share in Farmer and Rancher Organizations' objective to fully defend and uphold the Rule. Such a position would render the first presumption either entirely inapplicable or, at minimum, overcome by the Government Defendants' divergent interest. Farmer and Rancher Organizations have a narrower interest than Government Defendants' because they have no need or interest in aligning their litigation position with this Executive Order. They are only interested in protecting their members economic interests and livelihoods through a vigorous defense of the Rule. *See Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) (finding intervenors' interest sufficiently divergent from government where they only sought to keep their at-issue school

---

in this case. *See Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016); *Edwards*, 78 F.3d at 1005. However, even if this presumption applied, it is overcome by the same divergent interests movants discuss in the context of the same-ultimate-objective presumption.

vouchers and did not share in State's other interest in maintaining a relationship with federal government or courts). The Government Defendants' interest in advancing the new administration's other policies and priorities unrelated to protecting livestock and poultry producers, and to that end possibly reversing course in this litigation, sufficiently shows its representation "may" be inadequate and justifies intervention. *See Texas*, 805 F.3d at 663 (finding proposed intervenors need only show the "particular ways in which their interests diverge" and how "these divergent interests have impacted the litigation.").

And even absent the Executive Order, USDA's historical efforts to secure and defend robust protections for farmers and ranchers under the Packers and Stockyards Act indicates there are other ways that Proposed Intervenors' interests diverge from those of Government Defendants. Farmer and Rancher Organizations have been working to secure better protections for farmers and ranchers under the Packers and Stockyards Act for over thirty years, at times in direct opposition to USDA actions. Notably, some of the Farmer and Rancher Organizations were at odds with certain policy decisions made by USDA during President Trump's first administration, including the withdrawal of an interim final rule that sought to define per se violations of unfair, unjustly discriminatory, and deceptive practices—much like the Rule at issue here—*see Scope of Sections 202(a) and (b) of the Packers and Stockyards Act*, 82 Fed. Reg. 48,594 (Oct. 18, 2017), and its replacement with a rule that left farmers and ranchers vulnerable to abusive treatment. *See Undue and Unreasonable Preferences and Advantages Under the Packers and Stockyards Act*, 85 Fed. Reg. 79,779 (Dec. 11, 2020); Bullard Decl. ¶¶ 20, 22 (opposing rescission and replacement of Farmer Fair Practices Rule); Buttram Decl. at ¶ 6 (filing lawsuit challenging USDA's rescission of the Farmer Fair Practices Rule); Kendall Decl. ¶ 7 (describing opposition to 2020 Rule that made it harder for farmers and ranchers to protect their interests in court). This recent history

15

shows that Farmer and Rancher Organizations' interests diverge from those of Government Defendants. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (finding applicant's interest in defending regulation not adequately represented by government where there was a "well-documented history" of government failure to issue or enforce protective regulations). Therefore, Farmer and Rancher Organizations satisfy the requirements for intervention as of right.

### E. Farmer and Rancher Organizations Have Article III Standing

It is unclear whether Farmer and Rancher Organizations will need to establish Article III standing in this matter because Government Defendants have not stated their position on defending the Rule and standing is only required when an intervenor seeks "relief that is different from that which is sought by a party with standing." *Banks v. St. James Par. Sch. Bd.*, 757 F. App'x 326, 329 (5th Cir. 2018) (quoting *Town of Chester*, 581 U.S. at 440). Regardless, Farmer and Rancher Organizations have Article III standing if they seek to uphold the Rule and the Government Defendants do not. An organization has standing to participate in a lawsuit on behalf of its members where (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 737 (5th Cir. 2016).

First, Farmer and Rancher Organizations' members have standing to sue in their own right. Standing requires a party to show a concrete injury, a causal relationship between the injury and the conduct complained of, and that a ruling in their favor likely would redress that injury. *See Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023). Movants' members meet the injury-in-fact requirement because the regulation this action seeks to enjoin provides them with critical protections against unfair trade practices that would otherwise harm their business operations and

livelihoods. Bullard Decl. ¶¶ 13–17, 26–27; Arredondo Decl. ¶¶ 14, 16–20; Buttram Decl. ¶¶ 11–19; Kendall Decl. ¶¶ 9–14, 16. *See also Cooper*, 820 F.3d at 737 (finding members had standing to defend a licensing law that benefited their business). Further, Farmer and Rancher Organizations' members easily satisfy the traceability and redressability elements of standing because loss of the Rule's protections would be the direct result of a ruling in favor of Plaintiffs and/or Government Defendants failing to vigorously defend the Rule. Successfully defending the Rule would redress that injury. *See Tex. Med. Ass'n v. U.S. Health & Hum. Servs.*, 110 F.4th 762, 773 (5th Cir. 2024) (explaining that when a party is "an object of a regulation," there is little question that the regulation's action or inaction "has caused him injury, and that a judgment preventing or requiring the action will redress it").

Second, protecting economic interests of farmers and ranchers and opposing abusive corporate practices that threaten them is core to Farmer and Rancher Organizations' missions and work, and thus the interests in this case are germane to the Organizations' purposes. Bullard Decl. ¶¶ 16, 12, 18–25; Arredondo Decl. ¶¶ 4, 9–13; Buttram Decl. ¶¶ 4–6; Kendall Decl. ¶¶ 4–8. Finally, defending the Rule does not require the individual participation of any members. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010) (finding actions for declaratory and injunctive relief generally do not require the participation of individual members). As such, Farmer and Rancher Organizations have Article III standing.

## II. ALTERNATIVELY, FARMER AND RANCHER ORGANIZATIONS SHOULD BE GRANTED PERMISSIVE INTERVENTION

If the Court declines to grant Farmer and Rancher Organizations intervention as of right, the proposed intervenors request the Court permit them to intervene in the alternative. Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

17

24(b)(1)(B). The Court has wide latitude to grant permissive intervention, and has found it appropriate to grant such requests when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Transatlantic Commodities PTE Ltd v. Hanwin Shipping Ltd.*, No. 4:22-cv-1983, 2024 WL 4535472, at *5 (Sept. 24, 2024) (internal citations and quotations omitted).

Here, the Court should permit Farmer and Rancher Organizations to intervene. As discussed above, this case is in its early stages and Farmer and Rancher Organizations also acted promptly at the first indication their interests may not be protected by Government Defendants. Moreover, Farmer and Rancher Organizations seek to defend the Rule's legality, which is the focus of this case, thus providing a "common question of law [and] fact." Because Farmer and Rancher Organizations would raise issues directly responsive to Plaintiffs' claim, they would necessarily "assert a claim or defense in common with the main action." Finally, as Farmer and Rancher Organizations will abide by whatever schedule the Court may set to manage this case going forward, their intervention will cause no delay or prejudice to the parties. On the other hand, it would be unjust to exclude Farmer and Rancher Organizations from this case, which could strip their members of critical and hard-won protections.

## CONCLUSION

For the foregoing reasons, Farmer and Rancher Organizations respectfully request the Court grant them intervention as of right under Rule 24(a), or, in the alternative, permissive intervention under Rule 24(b).

Dated: April 1, 2025

Respectfully Submitted,

/s/ *Tyler Lobdell*
Tyler Lobdell, *Attorney-in-Charge*
Idaho Bar No. 10431
Emily Miller
CA Bar No. 336417
Food & Water Watch
1616 P Street, NW Suite 300
Washington D.C. 20036
T: (202) 683-2500
tlobdell@fwwatch.org
eamiller@fwwatch.org

/s/ *Q. Tate Williams*
Q. Tate Williams
TBN:   24013760
Stephanie K. McGuire
TBN:   11100520
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, TX 77006
T: (713) 804-8038
tate@hilderlaw.com

*Counsel for Defendant-Intervenors*

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with Plaintiffs and Defendants. Plaintiffs and Defendants have advised the Proposed Defendant-Intervenors that they oppose this Motion to Intervene.

<i>/s/ Tyler Lobdell</i>

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2025, I electronically filed the foregoing document entitled Farmer and Rancher Organizations' Motion to Intervene as Defendants. Copies will be served upon counsel of record, and may be obtained through, the Court's CM/ECF system.

<i>/s/ Tyler Lobdell</i>