IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL CHICKEN COUNCIL, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § § | No. 4:24-cv-03786 |
| BROOKE ROLLINS, in her official capacity as SECRETARY OF AGRICULTURE, *et al.*, | § § § § | Judge Andrew Hanen |
| *Defendants*, | § § | |
| and | § § | |
| RANCHERS CATTLEMEN ACTION LEGAL FUND UNITED STOCKGROWERS OF AMERICA, WESTERN ORGANIZATION OF RESOURCE COUNCILS, ALABAMA CONTRACT POULTRY GROWERS ASSOCIATION, AND LATINO FARMERS AND RANCHERS INTERNATIONAL, | § § § § § § § § § § | |
| *Proposed Defendant-Intervenors* | § § § | |

### DECLARATION OF RUDY ARREDONDO

I, RUDY ARREDONDO, am over the age of 18, have personal knowledge of the facts set forth herein, and, if called as a witness, could and would competently testify to the following:

1. I am the Director and Founder of Latino Farmers and Ranchers International ("LFRI"). LFRI was founded in 2023, and I have been the President since that time.

2. I make this declaration in support of LFRI and other Farmer and Rancher Organizations' motion to intervene in this case, which challenges the United States Department of Agriculture's ("USDA") Final Rule issued March 6, 2024, entitled "Inclusive Competition and Market Integrity Under the Packers and Stockyard Act" (the "Rule").

3. LFRI is a 501(c)(3) tax-exempt organization incorporated in the state of Delaware. LFRI's main office is located at 19627 Crystal Rock Dr., Germantown, MD, 20874.

4. LFRI's mission is to assist and advocate for farmworkers, farmers and ranchers that have been historically discriminated against. To accomplish this, LFRI works in rural communities across the US and beyond to organize, educate, and empower its members. Our mission and activities allow us to provide our members and their communities access to identified resources and opportunities that have previously been denied to them. This allows our members to be self-sufficient and further develop and assist their communities. LFRI initiates local involvement and is the bridge to opportunities in domestic and international markets that will assure success and sustainability for our constituents.

5. LFRI is a network of multi-ethnic, small to medium sized farmers and ranchers that come together through collaboration with other organizations that also represent the interests of farmers and ranchers. LFRI has approximately 75,000 small to medium sized producers that we consider our constituents – these are the farmers and ranchers that we work for and advocate on behalf of. Our network of allied organizations includes Rural Coalition, Ranchers-Cattlemen Action Legal Fund United Stockgrowers of America, National Farmers Union, Farm Bureau,

Future Harvest, United Farmworkers Union, American Sustainable Business Network, and Federation of Southern Co-Ops, among others.

6. LFRI is a member of the Ranchers Cattlemen Action Legal Fund United Stockgrowers of America.

7. Each year LFRI hosts a meeting, or Congreso, where its voting membership gathers to discuss issues and set LFRI's priorities for the coming year and beyond.

8. Many of LFRI's constituents are small-scale farmers and ranchers that struggle to access conventional supply chains, so we are trying to develop local and regional meatpacking operations so that our constituents can grow their businesses without having to be exposed to the big meatpackers who generally disfavor smaller-scale producers.

9. LFRI's constituents include cattle ranchers, farm workers, farm owners, and contract producers.

10. LFRI also works with and on behalf of Native American farmers and ranchers, in particular pueblo communities in New Mexico and the Navajo Nation. These farmers and ranchers have been subjected to particularly bad discrimination and abusive treatment across the board, including refusals to deal with them. LFRI partners with the Intertribal Agricultural Council to advocate for the interests of these constituents.

11. LFRI works to provide technical support to its constituents and to advocate on important policy and legal issues on their behalf.

12. LFRI's programs areas include:
    a. Emergency Relief Program that helps farmers and ranchers understand what disaster assistance may be available to them through USDA;

b. Latino Farmer Exchange Program, a J1 visa exchange program for universities and farmers in the United States to work with a grower, laborer, or student from a Latin American country;

c. Nueva Generation en La Tierra, a youth program similar to Future Farmers of American an 4H for students to learn from the cultural knowledge base at LFRI and to grow as farmers;

d. La Historia Program, a partnership designed to digitize the stories and certifications of small to medium sized family farms to assist them getting their products to market and telling their story;

e. Mano a Mano Program to share technical assistance among farmers to enhance regenerative agricultural programs in the United States and beyond;

f. Local Food to Global Impact, a capacity-building program designed to incentivize farmers to implement climate resilient and sustainable practices and distribute the resulting food locally;

g. Hoy para Futuro Program designed to increase accessibility for future and current farmers to research opportunism, emerging technologies, first market opportunities and incentives;

h. Partnership Organization Collaboration Program designed to assist in the organization and staffing of regional cooperatives; and

i. Land Leaders Program intended to develop lead regional advocates to gather and express the concerns of our members to local, state, and national governments.

13. LFRI regularly engages in advocacy across the country, including to USDA and legislators. For example, for the last three years LFRI officers have joined a "fly in" organized

by Farm Action to advocate to policymakers on our priority issues, including better protections for farmers and ranchers.

14. Discrimination is an historic practice that has limited and continues to limit LFRI's constituents' business opportunities. For example, some LFRI members that raise cattle feel that they can only get a fair deal when they sell their cattle in certain places. For some, this means not contracting directly with the large packers or selling directly to them. Instead, they sell through sale barns that then go on to sell the cattle to feedlots and then the big packers. Since sale barns usually have multiple buyers and numerous sellers, buyers do not know which cattle are being sold by a Hispanic or other minority rancher and which are not. Avoiding this potential for discrimination provides better opportunity to get fair prices. But it also means fewer market opportunities for our members.

15. Some LFRI constituents have even experienced discrimination at the hands of USDA employees working for the Farm Service Agency, which provides critical loans to farmers and ranchers. We have seen these officials disfavor our constituents based on their race or ethnicity. Because our constituents are smaller-scale farmers and ranchers, this only makes getting loans and equal treatment more difficult. LFRI believes that farmers or ranchers that upset a big packer can face repercussions in their ability to secure loans from the Farm Service Agency, implying a degree of coordination between the packers and USDA employees in some places. Inability to get Farm Service Agency loans can be devastating for a farmer or rancher.

16. While our members have experienced this mistreatment firsthand and will be exposed to abuse in the future, pervasive retaliation over many years against producers that "get out of line" has led to a culture of fear and silence. LFRI's members understandably fear that coming forward personally in this or other legal proceeding would put their businesses and

livelihoods at risk. That the plaintiffs in this lawsuit, representing big meatpackers and poultry companies, are trying to strike down a Rule written to protect our constituents from this kind of retaliation and discrimination only increases the risk and fears.

17. If the Rule's prohibition on discriminating against a farmer or rancher based on his race or ethnicity were to be struck down in this case as Plaintiffs want, it would take away a critical and hard-won protection for LFRI's constituents and would only exacerbate the challenges faced by our members to get equal treatment. LFRI strongly supported the final Rule precisely because it offers much needed and clear protections against discrimination.

18. LFRI's constituents also benefit from the Rule's clear protections against retaliation and deception. As smaller-scale producers that historically have been vulnerable and marginalized, LFRI is concerned that the risk of retaliation will increase for our constituents if the Rule is eliminated by the Court. Similarly, our constituents are at increased risk of being deceived by, for example, refusals to contract based on false or misleading reasons when the real reason is discriminatory or an unwillingness to work with marginalized, smaller farmers and ranchers.

19. LFRI works to educate our members about the abusive practices in livestock markets and to provide tools to navigate those challenges.

20. The livelihoods and economic opportunities of LFRI's members depend on being able to run their businesses free of the discrimination, retaliation, and deception prohibited by the Rule and upon effective enforcement of the Packers and Stockyards Act. The Rule provides critical protections to LFRI's constituents against this abusive conduct at the hands of packers that pervade the livestock and poultry industries. LFRI and its constituents would suffer significant harm if the Rule were vacated as a result of this litigation. LFRI strongly believes the

only way it can adequately protect its constituents' interests that are a stake in this action is by intervening in defense of the Rule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2025 in Germantown, MD

*Rudy Arredondo*

_____

Rudy Arredondo