# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| NATIONAL CHICKEN COUNCIL, et al., §<br>§<br>§<br>§ *Plaintiffs*,<br>§<br>§<br>v. §<br>§<br>§<br>TOM VILSACK, in his official capacity §<br>as SECRETARY OF AGRICULTURE, et al., §<br>§<br>§<br>§ *Defendants*.<br>§<br>§ | Civil Action No. 4:24-cv-03786 |

## PLAINTIFFS' OPPOSITION TO
## FARMER AND RANCHER ORGANIZATIONS'
## MOTION TO INTERVENE AS DEFENDANTS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PROCEDURAL BACKGROUND ..................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.  Proposed Intervenors Are Not Entitled to Intervene As Of Right ...................... 4

    A.  Proposed Intervenors' Motion is Not Timely ......................................... 5

    B.  Proposed Intervenors Lack a Legally Protected Interest That May be Impaired ... 5

    C.  Proposed Intervenors Have Not Shown That The Government Does Not Adequately Protect Their Interests ....................................................... 7

    D.  Proposed Intervenors Lack Article III Standing ..................................... 9

II.  Permissive Intervention Is Not Warranted ........................................................ 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APFA Inc. v. UATP Mgmt., LLC,*
  537 F. Supp. 3d 897 (N.D. Tex. 2021) ...............................................................9, 10

*Ass'n of Am. Phys. & Surgeons, Inc. v. Tex. Med. Bd.,*
  627 F.3d 547 (5th Cir. 2010) .....................................................................................9

*Brumfield v. Dodd,*
  749 F.3d 339 (5th Cir. 2014) .....................................................................................3

*City of Houston v. American Traffic Sols., Inc.,*
  668 F.3d 291 (5th Cir. 2012) .....................................................................................6

*Deotte v. Azar,*
  332 F.R.D. 173 (N.D. Tex. 2019) ..............................................................................8

*Edwards v. City of Houston,*
  78 F.3d 983 (5th Cir. 1996) .......................................................................................6

*Franciscan Alliance, Inc. v. Azar,*
  414 F. Supp. 3d 928 (N.D. Tex. 2019) ...............................................................5, 6, 9

*Frazier v. Wireline Sols., LLC,*
  No. C-10-3, 2010 WL 2352058 (S.D. Tex. June 10, 2010).....................................11

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans
  Levee Dist.,*
  493 F.3d 570 (5th Cir. 2007) .....................................................................................3

*Hopwood v. Texas,*
  21 F.3d 603 (5th Cir. 1994) .......................................................................................8

*Hunt v. Wash. St. Apple Adver. Comm'n,*
  432 U.S. 333 (1977).....................................................................................................9

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
  806 F.2d 1285 (5th Cir. 1987) .................................................................................11

*La Union del Pueblo Entero v. Abbott,*
  29 F.4th 299 (5th Cir. 2022) ......................................................................................4

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020)................................................................................................8, 9

ii

*Northland Family Planning Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007) .......................................................................5, 11

*SEC v. Funding Res. Grp.*,
    233 F.3d 575 (5th Cir. 2000) .................................................................................5

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ................................................................................3

*Sommers v. Bank of Am., N.A.*,
    835 F.3d 509 (5th Cir. 2016) ................................................................................4

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ................................................................................9

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ........................................................................4, 5, 6

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)...............................................................................................8

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)...............................................................................................6

*Veasey v. Perry*,
    577 Fed. App'x 261 (5th Cir. 2014) ....................................................................6

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ................................................................................4

*Wheeler v. Pilgrim's Pride Corp.*,
    591 F.3d 355 (5th Cir. 2009) ................................................................................1

**Statutes**

5 U.S.C. § 706.............................................................................................................2

7 U.S.C. § 192(a) and (b)...........................................................................................1

Packers and Stockyards Act Sections 202(a) and (b) ....................................... *passim*

9 C.F.R. § 201.304.....................................................................................................2

9 C.F.R. § 201.306.....................................................................................................2

iii

**Other Authorities**

Inclusive Competition and Market Integrity Under the Packers and Stockyards
    Act, 87 Fed. Reg. 60,010 (Oct. 3, 2022) .......................................................2

Inclusive Competition and Market Integrity Under the Packers and Stockyards
    Act, 89 Fed. Reg. 16,092 (Mar. 6, 2024) .....................................................2

Executive Order *Ending Radical and Wasteful Government DEI Programs and
    Preference*, 90 Fed. Reg. 8,339 (Jan. 20, 2025).........................................2

FED. R. CIV. P. 24(a), (b)(1) .............................................................................4

FED. R. CIV. P. 24(a).......................................................................................5, 6

FED. R. CIV. P. 24(a)(2)......................................................................................3

FED. R. CIV. P. 24(b)(1)(B) ..............................................................................11

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1909 (3d ed. June 2024 update) ....................................................................7

National Chicken Council, Meat Institute, Southwest Meat Association, and Texas Broiler Council (collectively "Plaintiffs") filed this lawsuit six months ago, challenging a federal agency rulemaking that strayed from the agency's statutory mandate. Four public interest organizations now belatedly seek to intervene on behalf of the Government, arguing that their members are "intended beneficiaries" of the challenged rule and will be harmed if the rule is vacated.

Proposed Intervenors do not meet the elements for either intervention as of right or permissible intervention. They do not have a direct and legally protectable interest warranting intervention. They have failed to make a non-speculative showing that the Government will not adequately represent their interests. And to the extent that Proposed Intervenors' position could somehow be seen to differ from the Government's, they lack Article III standing to pursue it because they have failed to identify specific harm to individual members.

For all these reasons, this Court should deny intervention.

## PROCEDURAL BACKGROUND

Sections 202(a) and (b) of the Packers and Stockyards Act (PSA) prevent packers, swine contractors, and live poultry dealers from (a) engaging in or using "any unfair, unjustly discriminatory, or deceptive practice or device," or (b) subjecting any particular person or locality to "any undue or unreasonable prejudice or disadvantage in any respect." 7 U.S.C. § 192(a) and (b). The Fifth Circuit—along with every other circuit court of appeals to address the issue—has held that any violation of Sections 202(a) or (b) requires a showing of actual or likely injury to competition. *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 357 (5th Cir. 2009) ("[T]he purpose of the [PSA] is to protect competition and, therefore, only those practices that will likely affect competition adversely violate the Act.").

1

In March 2024, the Agricultural Marketing Service (AMS) finalized a rule prohibiting regulated entities from taking "adverse action against a covered producer" based upon that producer's "status as a market vulnerable individual or as a cooperative." Inclusive Competition and Market Integrity Under the Packers and Stockyards Act, 87 Fed. Reg. 60,010 (Oct. 3, 2022) (to be codified at 9 C.F.R. pt. 1); 9 C.F.R. §§ 201.304(a), (b), 201.306 (the Rule). In the guise of promoting anti-discrimination principles, the Rule provides that a violation of Section 202 of PSA can be found even when the claimant does not make any showing of actual or likely injury to competition. *See* 9 C.F.R. § 201.304; *see also* Inclusive Competition and Market Integrity Under the Packers and Stockyards Act, 89 Fed. Reg. at 16,092 (Mar. 6, 2024) (to be codified at 9 C.F.R. pt. 201). The Rule thus exceeds the agency's statutory authority under the PSA.

In October 2024, Plaintiffs filed this lawsuit challenging the Rule under the Administrative Procedure Act, 5 U.S.C. § 706. Compl., ECF 1 at 11–16. After the Court approved a stipulated briefing schedule, Defendants filed an unopposed motion for a stay on February 10, 2025. Order, ECF 30; Defs.' Consent Mot., ECF 32. In their stay request, Defendants asked for "additional time to evaluate their position in this case and determine how best to proceed" after the President issued the Executive Order *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025). Defs.' Consent Mot., ECF 32 at 1. The Court granted that motion and gave the parties until April 11 to file a status report, which they timely did. Order, ECF 36; J. Status R., ECF 42.

Nearly two months after Defendants filed their stay motion, Proposed Intervenors—four public interest organizations—moved to intervene as defendants. Mot. Intervention, ECF 38. Proposed Intervenors argued that their members were "intended beneficiaries" of the Rule and that

their interests may not be "adequately represented" by Government Defendants. *Id.* at 8, 11, 13-16, 18.

## ARGUMENT

Proposed Intervenors do not satisfy any of the legal requirements for intervention. They may not intervene as of right because they do not have a concrete, significant interest in the resolution of the dispute. Any interest they *do* have is adequately represented by Defendants. Proposed Intervenors also lack associational standing because they have not shown that their members could intervene in their own right. And their delay in seeking intervention weighs against granting their motion as well. For all these reasons, their motion to intervene should be denied.

## I.  Proposed Intervenors Are Not Entitled to Intervene As Of Right

The Fifth Circuit has held that a party seeking intervention as of right under Rule 24(a)(2) must satisfy four requirements: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

Proposed Intervenors fail to satisfy not just one but *all four* of these requirements: They delayed in filing their motion; they have not established that they have anything beyond an ideological interest in this case, nor that disposition of the action will impede their ability to protect their interests; and they fail to show that the government will not adequately represent their interests.

4

## A.    Proposed Intervenors' Motion is Not Timely

A party may intervene in a case, whether as of right or permissively, only if its request is made by "timely motion." FED. R. CIV. P. 24(a), (b)(1).  The Fifth Circuit has explained that the timeliness inquiry is a "contextual" one, instructing courts to ignore "absolute measures of timelines" and instead to take "all the circumstances" into account. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (internal quotation marks and citations omitted).  Such circumstances include, among other things, "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene [and] the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention" earlier. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512–13 (5th Cir. 2016).

This lawsuit was filed more than six months ago, back in October.  Proposed Intervenors claim that they first became aware of their need to intervene on February 10, when the government moved for a temporary stay.  Mot. Intervention, ECF 38 at 10.  Even assuming that were true, Proposed Intervenors inexplicably waited more than seven *additional* weeks to seek intervention.  Proposed Intervenors' delay in seeking intervention weighs in favor of denying their motion.

## B.    Proposed Intervenors Lack a Legally Protected Interest That May be Impaired

A party seeking to intervene as of right also must show a "direct, substantial, legally protectable interest in the proceedings." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022); *see Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (explaining that Fifth Circuit precedent "reveal[s] that the inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.").  A party that "seeks to intervene solely for ideological, economic, or precedential reasons . . . merely

*prefers* one outcome to the other," and so is not entitled to intervene under Rule 24(a). *Id.* at 657 (emphasis in original).

In support of their motion, Proposed Intervenors claim that they have a legally protected interest in the matter because their "members are the direct beneficiaries of the challenged Rule" and because of their work "advocating for stronger [PSA] protections for their members." Mot. Intervention, ECF 38 at 11–12. But Proposed Intervenors have not demonstrated that their members would be harmed if the Rule were declared unlawful. *Compare Texas*, 805 F.3d at 661 (intervenors have a legally protectable interest in Deferred Action for Parents of Americans because "if DAPA is invalidated, [intervenors] will lose their opportunity to obtain deferred action"), *with SEC v. Funding Res. Grp.*, 233 F.3d 575, *4 (5th Cir. 2000) (denying intervention for victims seeking to intervene in SEC enforcement action regarding separate Ponzi scheme where the victims did not claim "an interest relating to the . . . transaction which is the subject of the action") (emphasis omitted). A vague reference to a general desire for enhanced PSA protections does not satisfy Proposed Intervenors' obligation to demonstrate their members' "concrete and specific" rights with particularity. *Texas*, 805 F.3d at 658.

More to the point: Public interest groups' interests in advocacy with respect to a regulation do not support intervention in an action that "does not involve the regulation of [the organization's] conduct in any respect." *Id.* (quoting *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007) (holding that advocacy organization opposing abortion could not intervene in action challenging Michigan regulation because the organization's interest in the action was ideological only); *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928, 937 (N.D. Tex. 2019) (noting that organizations seeking to intervene "in their capacity as advocacy groups" would "have only an ideological interest" and could not intervene).

6

Proposed Intervenors cite *City of Houston v. American Traffic Solutions, Inc.* to suggest that their advocacy efforts amounted to a legally protected interest in this action.  *See* Mot. Intervention, ECF 38 at 12 (citing 668 F.3d 291 (5th Cir. 2012)).  But the circumstances presented in that case were "unique":  There, the putative intervenors "engineered the drive that led to [the passage of] a city charter amendment" that they later sought to protect as intervening parties.  *Id.* at 294.  By contrast, Proposed Intervenors here only submitted comments in favor of the Final Rule—and only two of the four intervening organizations, R-CALF and WORC, are credited with doing even that.  Their actions with respect to this action more closely resemble a generic ideological interest asserted in their "capacity as advocacy groups." *Franciscan Alliance, Inc.,* 414 F. Supp. 3d at 937.  That does not amount to a "concrete stake in the outcome" of this action so as to support intervention.  *Texas,* 805 F.3d  at 661.

## C.    Proposed Intervenors Have Not Shown That The Government Does Not Adequately Protect Their Interests

Under Rule 24(a)'s fourth requirement, a party seeking intervention must show that the existing party's "representation of his interest 'may be' inadequate."  *Id.* at 661 (5th Cir. 2015) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).  Recognizing that "this requirement must have some teeth," the Fifth Circuit created two presumptions of "adequate representation" that, when applicable, putative intervenors must overcome.  *Veasey v. Perry*, 577 Fed. App'x 261, 263 (5th Cir. 2014); *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996).

First, this circuit presumes that a proposed intervenor's interests are adequately represented where it shares "the same ultimate objective [with] a party to the lawsuit." *Edwards*, 78 F.3d at 1005.  The intervenor must show "adversity of interest, collusion, or nonfeasance" on the part of the existing party to overcome the presumption.  *Id.*  And second, a presumption of adequacy arises

7

"when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.*; *see also* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed. June 2024 update) ("The rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a *very strong showing* of inadequate representation has been made.") (emphasis added).

Both presumptions apply here. Proposed Intervenors have not shown that the Government's objective differs from their own ultimate goal: upholding the Final Rule. Nor have Proposed Intervenors demonstrated that the Government will not adequately represent their interest in seeing the Rule upheld. Indeed, the Government itself is still evaluating its position in this case. Under these circumstances, it is hard to see how Proposed Intervenors can satisfy the requirement that they demonstrate an actual difference between their position and the Government's.

Proposed Intervenors suggest that the Government's request for a brief stay "indicates that [the government] may not share intervenors' interest in vigorously defending the Rule." Mot. Intervention, ECF 38 at 14. They also contend that, unlike the Government, they "have no need or interest in aligning their litigation position with th[e] Executive Order." *Id.* But these claims are wholly speculative. The Government promulgated the Rule, and thus is best positioned to defend it (to the extent that can be done). The Government has yet to take a position in this litigation that conflicts with the Rule. Defendants have merely asked for an extension so that they could evaluate their litigation position. Proposed Intervenors' vague claim that the motion for a stay "suggests" that Defendants will change their position does not amount to the "much stronger

showing of inadequacy [that] is required" where the existing party is a government agency. *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994).

Proposed Intervenors also point to their historical differences of opinion with Defendants. They claim that when "working to secure better protections for farmers and ranchers under the [PSA] for over thirty years," they have "at times [worked] in direct opposition to USDA actions." Mot. Intervention, ECF 38 at 15.   But that they have taken diverging interests with USDA in the past does not mean that the Government will fail to adequately protect their interests now.  If that changes at some point, Proposed Intervenors can always seek to supplement the government's arguments as amici.  *See Hopwood*, 21 F.3d at 605–06 (denying motion to intervene where the proposed intervenors were "authorized to act as amicus and [the Court saw] no indication that the State would not welcome their assistance.").

### D.    Proposed Intervenors Lack Article III Standing

Even if Proposed Intervenors could somehow satisfy the other requirements for intervention, they would confront another hurdle:  standing.  To the extent that this Court were to find that Proposed Intervenors' interests differ from the Government's, they would be required to establish standing as a prerequisite for intervention.  *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[A]t the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 675 n.6 (2020) (applying *Town of Chester* to require intervenor-defendants to establish standing when they "pursues relief that is broader than or different from the party invoking a court's jurisdiction"); *Deotte v. Azar*, 332 F.R.D. 173, 179 (N.D. Tex. 2019) (holding that, because "no party is seeking [intervenor-

defendant's] desired relief," the intervenor was required to "demonstrate independent standing under . . . *Town of Chester*").[1]

In particular here, Proposed Intervenors bear the burden of establishing associational standing. An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Phys. & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Proposed Intervenors fail out of the starting gate; they have not demonstrated that their members have standing to sue. To satisfy this component, an association must allege injuries that are sufficiently imminent and concrete, traceable to the challenged action and redressable by the Court. *See Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019) (requiring at least a "substantial risk" that an injury will occur to "satisfy the imminence requirement"); *APFA Inc. v. UATP Mgmt., LLC*, 537 F. Supp. 3d 897, 906 (N.D. Tex. 2021) (requiring a "sufficiently concrete injury, traceable to Defendant and redressable by the Court, which would give Plaintiff's members standing to sue" under the first prong of associational standing).

Proposed Intervenors argue that the challenged Rule provides their members "with critical protections against unfair trade practices that would otherwise harm their business operations and

---

[1] One district court in this circuit has held that intervenor-defendants do not need to establish standing "because they generally do not 'pursue relief' within the meaning of *Town of Chester*." *Franciscan Alliance, Inc.,* 414 F. Supp. 3d at 939 n.3. But that case, which is not binding and was decided before the Supreme Court clarified standing requirements for intervenor-defendants in *Little Sisters of the Poor Saints Peter & Paul Home,* 591 U.S. at 675 n.6, should not persuade the Court.

livelihoods." Mot. Intervention, ECF 38 at 16–17. But neither this vague assertion nor any of the declarations attached to their brief explain how a successful challenge to the Rule would harm their members. Indeed, much of Proposed Intervenors' supporting declarations focus on *competition*-based harms that their members purportedly experience in the meatpacking industry. *See* ECF 38-2, Bullard Decl. ¶ 13 (explaining how centralized market power in the "highly concentrated meatpacking industry" creates the risk that packers will "deprive cattle feeders of the true and fair value of their cattle"); 38-3, Buttram Decl. ¶ 11 (explaining how chicken companies "manipulate th[e] contract system to their advantage and routinely subject growers to unfair . . . practices"); ECF 38-4, Arredondo Decl. ¶ 14 (describing harms to LFRI's members' business opportunities resulting from discrimination); ECF 38-5, Kendall Decl. ¶ 11–12 (explaining economic harms that WORC members experience as a result of "large packers' substantial market power"). But competitive harms that satisfy the statutory requirements would not be affected by vacatur of the Rule.

What's more, Proposed Intervenors have failed even to identify specific members of their organizations who have allegedly been injured. That alone is fatal to their associational standing. *See APFA,* 537 F. Supp. 3d at 906 ("To satisfy this prong, an association must make 'specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm.'") (quotation omitted).[2]

---

[2] Only the declaration from LFRI contains any reference to discrimination-related harms. *See* ECF 38-4, Arredondo Decl. ¶¶ 14-15. But those allegations do not mention how discriminatory practices harm specific LFRI constituents, and so are insufficient to show standing.

## II.    Permissive Intervention Is Not Warranted

Under Rule 24(b)(1)(B), the Court may grant permissive intervention "on timely motion" to a nonparty who "has a claim or defense that shares with the main action a common question of law or fact."  The decision to grant permissive intervention is "wholly discretionary," though courts "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289-90 (5th Cir. 1987); *Frazier v. Wireline Sols., LLC*, No. C-10-3, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010).

Proposed Intervenors waited to seek intervention until six months after this lawsuit was filed, and close to two months after this Court granted the Government's stay request.  They have not offered a viable theory to defend the Rule that differs from what the Government might say. To the contrary, the declarations submitted by Proposed Intervenors suggests that, as public interest groups, they will prioritize their ideological commitments over presenting legal arguments supporting the validity of the Final Rule.  *See Northland Family Planning Clinic,* 487 F.3d at 346 (rejecting intervention where public interest organizations' brief "takes an ideological approach to the litigation rather than attempting to argue for the Act's validity under the relevant Supreme Court precedent.").  Proposed Intervenors have failed to identify any legal arguments that would assist the Court when deciding if the Final Rule violates the APA.  Mot. Intervention, ECF 38 at 5, 18.  For these reasons, their intervention should be denied.

12

Dated: April 22, 2025

Respectfully submitted,

/s/ *Aaron R. Crane*
Aaron R. Crane
Texas SBN 24050459
Federal ID No. 619093
HOGAN LOVELLS US LLP
609 Main Street, Suite 4200
Houston, TX 77002
Telephone: (713) 632-1446
Facsimile: (713) 632-1401
aaron.crane@hoganlovells.com

Susan Cook (admitted pro hac vice)
Sean Marotta (admitted pro hac vice)
Brian Eyink (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington DC 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
susan.cook@hoganlovells.com
sean.marotta@hoganlovells.com
brian.eyink@hoganlovells.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/s/*Aaron R. Crane*
Attorney for Plaintiff

13