IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL CHICKEN COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity as SECRETARY OF AGRICULTURE, *et al.*, <br><br> *Defendants*. | No. 4:24-cv-03786 |

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE**

**INTRODUCTION**

This case is brought by National Chicken Council, Meat Institute, Southwest Meat Association, and Texas Broiler Council (together, "Plaintiffs")—four national, nonprofit trade associations representing "live poultry dealers" or "packers"—to challenge the U.S. Department of Agriculture's Agricultural Marketing Service's ("AMS") final rule, *Inclusive Competition and Market Integrity under the Packer and Stockyards Act*, 89 Fed. Reg. 16,092 (Mar. 6, 2024) (the "Rule"). Plaintiffs have brought a single count under the Administrative Procedure Act ("APA"), 5 U.S.C. § 700, *et seq.*, arguing primarily that the Rule exceeds the relevant statutory authority. *See generally* Compl. ¶¶ 68-76, ECF No. 1.

Now, Ranchers Cattlemen Action Legal Fund United Stockgrowers of America, Western Organization of Resource Councils, Alabama Contract Poultry Growers Association, and Latino Farmers and Ranchers International (together, "Putative Intervenors")—four organizations asserting that they represent the interests of livestock and poultry producers—seek to intervene as defendants either as of right under Federal Rule of Civil Procedure 24(a), or alternatively, permissibly under Federal Rule of Civil Procedure Rule 24(b). Putative Intervenors contend that, as the Rule's intended beneficiaries, their interests may not be adequately represented by Defendants.

1

Putative Intervenor's concerns are misplaced. Defendants have a strong interest in defending the government's legal authority to enact regulations. Courts are appropriately skeptical about the "right" of anyone to intervene under such circumstances, and Fifth Circuit case law reflects that skepticism in the form of two presumptions: (1) that government entities will adequately represent the interests of potential intervenors, and (2) that a party with the same objectives as potential intervenors will adequately represent the interests of potential intervenors. Putative Intervenors acknowledge these presumptions, *see* Intervention Mot. at 13-14, ECF No. 38 ("Mot."), but cannot overcome them. To warrant intervention as of right, Putative Intervenors must show an actual misalignment of interests, not just a possibility of divergence. Their motion fails to demonstrate such a misalignment, and accordingly, must be denied.

Putative Intervenors' request for permissive intervention should also be denied because their interests are adequately represented, intervention would undermine the Department of Justice's control over government litigation, and intervention would not significantly contribute to the resolution of this case.

## BACKGROUND

On October 3, 2022, AMS published a proposed rule amending the regulations implementing the Packers and Stockyards Act. 89 Fed. Reg. 16,092. AMS solicited comments on the proposed rule for an initial period of 60 days, and another extended period of an additional 45 days. *Id.* On March 6, 2024, after considering public comments, AMS issued a final rule, *Inclusive Competition and Market Integrity under the Packer and Stockyards Act*, 89 Fed. Reg, 16,092 (Mar. 6, 2024).

Plaintiffs filed suit in October 2024 challenging the Rule under the APA. *See* Compl., ECF No. 1. In particular, Plaintiffs allege that the Rule exceeds the relevant statutory authority, violates the major-questions doctrine, and is arbitrary and capricious. *See id.* ¶¶ 68-76.

The proceedings are still in early stages. In December, the parties conferred and determined that the case was "suitable for resolution based on the complete administrative record and cross-motions for summary judgment." Joint Mot. for Briefing Schedule at 1, ECF No. 26. They proposed a schedule for summary-judgment briefing, which the Court adopted. *See* Order Setting Briefing

2

Schedule, ECF No. 30. Following a change in Presidential administration in January 2025, with Plaintiffs' consent, Defendants moved for a 60-day stay of the briefing schedule to evaluate their position in this case and determine how best to proceed. *See* Defs.' Consent Mot. for Stay of Briefing Schedule, ECF No. 32. While that motion was pending, per the briefing schedule, Defendants produced the complete administrative record to Plaintiffs. The Court granted Defendants' stay motion. *See* Order on Defs.' Consent Mot. for Stay of Briefing Schedule, ECF No. 36. Putative Intervenors filed their motion for intervention on April 1, *see* Mot., and the parties filed a joint status report on April 11 proposing that the intervention motion be resolved before any merits briefing, *see* Joint Status Report, ECF No. 42.

## ARGUMENT

**I.     The Court should deny Putative Intervenors' motion for intervention as of right.**

To support a motion for intervention as of right under Federal Rule of Civil Procedure 24, a movant must establish four elements: (1) the motion for intervention is timely; (2) the movant has an interest relating to the property or transaction which is the subject of the action; (3) the movant is situated so that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the movant's interest is inadequately representing by the existing parties to the suit. *Rotstain v. Mendez*, 986 F.3d 931, 936-37 (5th Cir. 2021). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co., Ltd. v. Bd. of Levee Comm'rs of Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

For purposes of the present motion only, Defendants assume Putative Intervenors satisfy the first two requirements. The Court should reject Putative Intervenor's motion, however, because they have not established the remaining requirements, as they have not demonstrated that Defendants will not adequately represent their interests, and they can vindicate some of their interests only in another forum.

**A.   Defendants will adequately represent Putative Intervenor's interests.**

"The applicant has the burden of demonstrating inadequate representation[.]" *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). And "where the party whose representation is said to be

3

inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994); *see also Tenn. Walking Horse Nat'l Celebration Ass'n v. U.S. Dep't of Agric. ("TWHNCA")*, 2025 WL 747855, at *2 (N.D. Tex. Jan. 13, 2025) (same). The Fifth Circuit has recognized two separate "presumptions of adequate representation," both of which apply here. *See Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). One presumption arises when the movant "has the same ultimate objective as a party to the lawsuit," in which case the movant "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* Another arises where an existing party is a "governmental body or officer charged by law with representing the interests" of all its citizens. *Id.* In such a case, the movant similarly "must show 'that its interest is in fact different from that of the [government] and that the interest will not be represented by [the government].'" *Id.* (quoting *Hopwood*, 21 F.3d at 605). Both presumptions apply here, and Putative Intervenors have failed to rebut them.

      Putative Intervenors share the same ultimate objective as Defendants in this suit—namely, establishing that the agency had the requisite statutory authority—and Defendants are federal government officers representing federal government entities. Still, Putative Intervenors nevertheless contend that because Defendants have stated they are "evaluat[ing] their position in this case," they are "contemplating a change of course," and may not "fully defend" the Rule. Mot. at 14.

      As Defendants' prior filings indicate, they are currently evaluating whether the Rule comports with the new Administration's policy objectives. *See, e.g.*, Defs.' Consent Mot. for Stay of Briefing Schedule, ECF No. 32. Should the Administration decide to retain the Rule, the government will fully defend it. The government has a strong interest in defending its policies as lawful. And the government has a strong interest in avoiding the same "*stare decisis* effect of an adverse judgment" that concerns Putative Intervenors. *See* Mot. at 13.

      Plaintiffs' speculative allegations of what the government's interests may be or what the government may do here in the future do not suffice to overcome the presumption in favor of adequate representation in this context. *Compare id.* at 14-15 (invoking speculative phrases like "may not share," "suggests," "strongly signals," "would render," and "possibly reversing course") *with*

4

*Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025) ("[A]lthough the secretarial order might lead to a future shift in BOEM's litigation that is adverse to API's interest, that has not yet happened."); *League of United Latin Am. Citizens, Council No. 4434 v. Clements ("LULAC 4434")*, 884 F.2d 185, 189 (5th Cir. 1989) (concluding applicant must demonstrate "more than speculation as to the purported inadequacy" to warrant permissive intervention); *League of United Latin Am. Citizens v. Wilson ("LULAC")*, 131 F.3d 1297, 1307 (9th Cir. 1997) ("[T]he assertion that its interest might, either in 1998 or at some other unspecified time in the future, diverge from the interest of the [government] is purely speculative, and does not justify intervention as a full-fledged party."); *Friends of the Earth v. Haaland*, 2022 WL 136763, at *5 (D.D.C. Jan. 15, 2022) (denying motion to intervene without prejudice when court determined "any potential divergence of interests is too speculative . . . at this time"). Putative Intervenors' argument that Defendants' representation "may" be inadequate, Mot. at 15, thus falls well short of the requisite showing that their interests are "in fact" different from Defendants, *Edwards*, 78 F.3d at 1005.

This stands in sharp contrast to Putative Intervenors' cited cases, *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) and *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015). In both of those cases, the governmental defendants' interests were not only broader than the proposed intervenor's interests, but were actually at odds with them. For instance, in *Brumfield*, the United States had sought to enjoin Louisiana from awarding school vouchers in districts under desegregation orders. 749 F.3d at 346. The Fifth Circuit held that parents whose children had received vouchers had a right to intervene as defendants in the case. *Id.* The court reasoned that, while the parents' "only concern [was] keeping their vouchers," "[t]he state ha[d] many interests [to balance] in th[e] case," including maintaining "its relationship with the federal government and with the courts that have continuing desegregation jurisdiction." *Id.* The court specifically noted, however, that the parents and the state had "stak[ed] out . . . significantly different" positions in the case, with the intervening parents challenging the jurisdiction of the district court while the state conceded it. *Id.*

Likewise, in *Texas*, the Fifth Circuit found that individuals who were likely to receive grants of deferred action had a right to intervene as defendants in a case brought by twenty-six states seeking

5

to enjoin the United States and the Department of Homeland Security from implementing a deferred action program. 805 F.3d at 655-56. The court did not merely rely on the fact that the proposed intervenors had narrower interests than the United States, but also that they had "identif[ied] the particular ways in which [their] divergent interests [had] impacted the litigation." *Id.* at 663. The court explained that "the Government has taken the position that the States may refuse to issue driver's licenses to deferred action recipients," which was "directly adverse" to the putative intervenors, whose interest "in working and providing for their families" made obtaining a driver's license "beneficial." *Id.* Thus, in both cases, "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments" established a right to intervene. *Id.* (quoting *Brumfield*, 749 F.3d at 346).

The concerns animating these decisions are not present here. Importantly, unlike in *Brumfield* and *Texas*, Putative Intervenors and Defendants are not making "contrary" arguments—indeed, unlike those cases, here, Defendants have yet to make *any* substantive arguments. *See* Mot. at 14 ("[T]he Government has yet to file a responsive pleading or merits brief articulating its objective or arguments."). The lack of unity present in those cases therefore cannot even exist in this one given the stage of proceedings. And there is no indication that Putative Intervenors and Defendants would ever advance contrary arguments. Rather, it appears both Putative Intervenors and Defendants believe that the APA challenge to the Rule lacks merit. *See TWHNCA*, 2025 WL 747855, at *2 ("No such legal misalignment exists here, as both Defendants and [proposed intervenors] believe that the challenges to the new rule lack merit."). To the extent that Putative Intervenors wish to express their interpretation of the relevant statutory authority, Defendants support Putative Intervenors acting as *amicus curiae* to provide that perspective. But Defendants submit that Putative Intervenors have not overcome the presumption of adequate representation here and do not have a right to intervene in this case.

To the extent that Putative Intervenors invoke historical differences between their policy positions and those of the USDA, such differences are irrelevant for purposes of the present intervention motion. *See* Mot. at 15-16. The question before the Court is whether Putative Intervenors

and Defendants have divergent interests in the *present* lawsuit. *See Texas*, 805 F.3d at 662 (explaining the Fifth Circuit had affirmed the denial of a motion to intervene where "the intervenors did not connect the allegedly divergent interests with *any concrete effects on the litigation*" (emphasis added)). To hold otherwise would effectively nullify Rule 24's requirements in suits against the government because, when considered beyond the scope of a particular lawsuit, private parties never stand in precisely the same position as the government.

Accordingly, Putative Intervenors have not overcome the presumption of adequate representation here.

### B. Putative Intervenors can protect their interests in another forum.

As stated, Defendants intend to defend the Rule's legality, and thus, can adequately represent Putative Intervenors' interests in that regard. To the extent that Putative Intervenors' motion reflects their concern that Defendants might adopt a different policy than the one implemented by the Rule via a separate rulemaking process, *see, e.g.,* Mot. at 14 (expressing concern Defendants might not "uphold the Rule"), Putative Intervenors can "protect [their] interests . . . through some other means," further supporting that intervention is "not appropriate." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525-26 (5th Cir. 1994). As Putative Intervenors are aware, they can advocate for their policy preferences "by engaging in the rulemaking process," as they have already done. Mot. at 12. Agencies are entitled to change their policy positions via the rulemaking process, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies[.]"), and Putative Intervenors' participation in this lawsuit would not "defend[] their gains during the [previous] regulatory process," Mot. at 13, from further regulatory change, as defeating an APA challenge to an existing regulation does not bar the promulgation of a new one. Accordingly, Putative Intervenor's interests in this vein can be protected only through participation in another forum.

\*\*\*

Because Putative Intervenors have not demonstrated a right to intervene, their motion for intervention as of right must be denied.

## II. This Court should also decline to permit permissive intervention.

The Court should also deny Putative Intervenors' request for permissive intervention. A court may grant permissive intervention pursuant to Rule 24(b)(1)(B) when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Texas v. United States*, 2021 WL 411441, at *1 (S.D. Tex. Feb. 6, 2021) (quoting *LULAC 4434*, 884 F.2d at 189 n.2). In resolving a request for permissive intervention, courts also consider, *inter alia*, "whether the intervenors' interests are adequately represented by other parties"; "whether they 'will significantly contribute to full development of the underlying factual issues in the suit'"; and "[t]he effect [of intervention] on the existing parties." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. ("NOPSI")*, 732 F.2d 452, 472-73 (5th Cir. 1984) (citation omitted). "Permissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (citation omitted).

Permissive intervention should be denied for the same reasons that Putative Intervenors cannot intervene as of right. As explained above, Defendants will adequately represent Putative Intervenors' interests in this lawsuit, namely "defend[ing] against a challenge to [a] regulation" that benefits them. Mot. at 11; *supra* pp. 4-7.

Permissive intervention should also be denied because intervention would prejudice Defendants by interfering with the Department of Justice's control of government litigation. The Attorney General—not private entities—is empowered to control "litigation in which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 516; *see United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976) ("It is axiomatic that the Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest."); *cf. Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) (recognizing the Texas Attorney General's interest in maintaining control over the State's criminal cases in rejecting request for intervention by a Texas district attorney). Further, the Solicitor General of the United States is charged with "[d]etermining whether, and to what extent, appeals will be taken by the Government." 28 C.F.R.

8

§ 0.20(b). The Fifth Circuit has recognized that when an intervenor obtains "full party rights," "the control of the original parties over their own lawsuit is significantly diminished." *NOPSI*, 732 F.2d at 473. In an APA case challenging a federal agency's statutory authority to promulgate a regulation, the federal government should control the course of the litigation and any future appeals, not private parties. *See id.* (denying intervention where addition of intervenor could prevent the original "parties from simply accepting a judgment of the district court by allowing it to become final without appeal"). Granting intervention would undermine these important federal interests.

Even if Putative Intervenors satisfied the minimum requirements for permissive intervention, this Court would have substantial discretion to deny their request. *See id.* at 470-71 (explaining that even where the requirements of Rule 24(b) are satisfied, "[p]ermissive intervention is wholly discretionary with the [district] court" (citations omitted)). In addition to the reasons set forth above, courts may also consider whether "the intervenor's presence is likely to provide significant contributions to the development of the underlying factual issues." *Texas*, 2021 WL 411441, at *1. This factor weighs against permissive intervention, as Putative Intervenors have no role in developing the factual record, as this action should be decided based on the administrative record that Defendants have already produced. "[T]he function of the district court [in APA cases] is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Britto v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 2023 WL 11957195, at *5 (N.D. Tex. Apr. 14, 2023) (citations omitted). "[T]he entire case on review is a question of law, and only a question of law." *Id.* (citations omitted). To the extent Putative Intervenors wish to present "new arguments to this Court," they "may participate through *amicus curiae* submissions." *Id.* But they are not needed to develop the factual record.

Courts also routinely deny intervention where, as here, the litigation would "unnecessarily become more complex," *Aransas Project v. Shaw*, 404 Fed. Appx. 937, 942 (5th Cir. 2010), "without any added benefit," *Nipponkoa Ins. Co., Ltd. v. Port Terminal R.R. Ass'n*, 2011 WL 1103584, at *2 (S.D. Tex. Mar. 23, 2011); *see Gulf Island Shipyards, LLC v. LaShip, LLC*, 2023 WL 372083, at *6 (E.D. La. Jan. 24, 2023) (explaining that "allowing a permissive intervention when the proposed intervenor and existing

9

party share the same goal, it 'unnecessarily expands the nature of [the] proceeding" (citation omitted)). While adding an additional set of defendants would complicate this lawsuit, there is no obvious benefit in adding Putative Intervenors as defendants.

Accordingly, the Court should exercise its discretion to deny permissive intervention.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the motion to intervene at this time without prejudice to refiling if there is a material change in circumstances. Defendants have no objection to Putative Intervenors participating in this case as *amicus curiae*.

Dated: April 22, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Taylor Pitz*
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: Taylor.N.Pitz@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

On April 22, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice