## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL CHICKEN COUNCIL, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | |
| | § | No. 4:24-cv-03786 |
| | § | |
| BROOKE ROLLINS, in her official | § | |
| capacity as SECRETARY OF | § | Judge Andrew Hanen |
| AGRICULTURE, *et al.*, | § | |
| | § | |
| *Defendants*, | § | |
| | § | |
| and | § | |
| | § | |
| RANCHERS CATTLEMEN ACTION | § | |
| LEGAL FUND UNITED | § | |
| STOCKGROWERS OF AMERICA, | § | |
| WESTERN ORGANIZATION OF | § | |
| RESOURCE COUNCILS, ALABAMA | § | |
| CONTRACT POULTRY GROWERS | § | |
| ASSOCIATION, AND LATINO | § | |
| FARMERS AND RANCHERS | § | |
| INTERNATIONAL, | § | |
| | § | |
| *Proposed Defendant-* | § | |
| *Intervenors* | | |

## FARMER AND RANCHER ORGANIZATIONS' CONSOLIDATED REPLY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.      The Motion Is Timely ..............................................................................................2

II.     Farmer and Rancher Organizations Have More Than Sufficient Interests to Satisfy
        Intervention as of Right ...........................................................................................3

III.    Farmer and Rancher Organizations Have Satisfied the Inadequate Representation
        Standard Through Their Divergent Interests and Different Arguments ...........................7

IV.     The Parties' Arguments Against Permissive Intervention Also Fail ................................14

CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) .........................................2

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014).............................................................7, 11, 12

*City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) ...............................5

*Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) ...........................................................8

*Dues v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir. 1994)......................................................14

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ....................................2, 3, 7, 8

*Entergy Gulf States La., LLC v. U.S. EPA*, 817 F.3d 198 (5th Cir. 2016)......................................8

*Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019) ....................................4, 6, 7

*Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994)......................................................8

*In re Lease Oil Antitrust Litig.*, 570 F.3d 244 (5th Cir. 2009)......................................................10

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022).........................................6, 7

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ....................10, 13

*Louisiana v. Burgum*, No. 24-30658, 2025 U.S. App. LEXIS 7592 (5th Cir. Apr. 1, 2025) ..........9

*Miller v. Vilsack*, No. 21-11271, 2022 U.S. App. LEXIS 7563 (5th Cir. Mar. 22, 2022)..............8

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984)...........15

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007)..............................4

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ........................................................15

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)........................................................2

*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers*,
       101 F.3d 503 (7th Cir. 1996) ........................................................10

*Stallworth v. Monsanto*, 558 F.2d 257 (5th Cir. 1977)......................................................2

*Tex. Med. Ass'n v. U.S. Health & Hum. Servs.*, 110 F.4th 762 (5th Cir. 2024) ............................7

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015).......................................................4, 9, 11, 13

*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) ............................................................6

*United States v. Associated Milk Producers, Inc.*, 534 F.2d 113 (8th Cir. 1976).........................15

*Wal-Mart Stores Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562 (5th Cir. 2016)............4, 6, 7

**Statutes**                                                                                          **Page(s)**

7 U.S.C. § 209..............................................................................................................................6

28 U.S.C. § 516............................................................................................................................14

**Register**                                                                                          **Page(s)**

Scope of Sections 202(a) and (b) of the Packers and Stockyards Act,
 82 Fed Reg. 48,594 (Oct. 18, 2017)...................................................................13

Unfair Practices and Undue Preferences in Violation of the Packers and Stockyards Act,
 82 Fed. Reg. 48,603 (Oct. 18, 2017)..................................................................13

**Regulations**                                                                                      **Page(s)**

28 C.F.R. § 0.20(b) ......................................................................................................................14

**Other**                                                                                             **Page(s)**

Presidential Memoranda, *Directing the Repeal of Unlawful Regulations* (Apr. 9, 2025) ............14

**INTRODUCTION**

Farmer and Rancher Organizations ("Organizations" or "Proposed Intervenors") file this Consolidated Reply in support of their Motion to Intervene. *See* Farmer and Rancher Organizations' Motion to Intervene as Defendants ("Motion"), Dkt. No. 38. Proposed Intervenors satisfy the Fifth Circuit's standards for both intervention as of right and permissive intervention. The parties' claims to the contrary are unpersuasive. The Court should grant the Motion to Intervene.

First, Government Defendants concede that Farmer and Rancher Organizations satisfy the timeliness and interest elements of the intervention test, *see* Defendants' Opp. to Mot. to Intervene ("Defs. Br."), Dkt. No. 44, at 3, and Plaintiffs' arguments to the contrary are wholly without merit. *See* Plaintiffs' Opp. to Mot. to Intervene ("Pls. Br."), Dkt. No. 43, at 5–7. The filing of the Motion at such an early stage of this litigation mere weeks after Farmer and Ranchers Organizations learned that the Government may not defend the Rule at issue here, paired with the lack of prejudice to the existing parties, renders it timely. Furthermore, Plaintiffs' claim that Farmer and Rancher Organizations—who represent the very independent livestock and poultry producers the challenged Rule is designed to protect—have an insufficient interest in the case stretches credulity.

Second, the parties' attempts to argue that Government Defendants adequately represent Proposed Intervenors' interests also fail. Both Plaintiffs and Government Defendants misunderstand the Fifth Circuit's presumptions of adequacy and consequently misapply them to the case at hand. The Government refuses to disclose what position it will take. Should the Government decide not to retain or defend the Rule, then its representation is inadequate. Even if it does defend the Rule, Farmer and Rancher Organizations more than satisfy the test given their divergent interests and the additional legal arguments they intend to make in support of the Rule.

//

1

## ARGUMENT

### I.  The Motion Is Timely

Farmer and Rancher Organizations filed a timely Motion, and Government Defendants rightfully do not contest this element of the test, acknowledging that the case is still in its "early stages." Defs. Br. at 2. Plaintiffs' paltry argument focuses on the wrong inquiry and fails to identify any prejudice to the parties that could counsel against intervention.

Plaintiffs place much emphasis on the fact that Farmer and Rancher Organizations filed their Motion six months after the case began. Pls. Br. at 5, 12. But "the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely." *Stallworth v. Monsanto*, 558 F.2d 257, 265 (5th Cir. 1977). The relevant inquiry is when the would-be intervenor first became aware that the original parties may no longer protect their interests, since intervention before that point could simply "waste[] judicial resources." *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (citing *Stallworth*, 558 F.2d at 264).

As explained in their Motion, Farmer and Rancher Organizations learned on February 10, 2025, that the Government may not protect their interests and moved to intervene a mere 7 weeks (or 36 business days) later, well within the range of time the Fifth Circuit has found to be timely. *See Espy*, 18 F.3d at 1205–06 (finding intervention within two months timely); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (finding a lapse of 47 days timely); *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (same for five months).

Moreover, "timeliness is not determined solely by the length of time that passes before a motion to intervene is made"; courts also must consider whether the timing prejudices the parties. *Gibbs*, 804 F.2d at 321. Yet Plaintiffs fail to provide a single example of how they are allegedly prejudiced by the timing of the Motion, because they cannot. Again, these proceedings are in the

2

"early stages," Defs. Br. at 2, which overwhelmingly favors timeliness. *See Edwards*, 78 F.3d at 1001 (observing that motions filed prior to entry of judgement favor timeliness). As such, the Motion is timely.

## II. Farmer and Rancher Organizations Have More Than Sufficient Interests to Satisfy Intervention as of Right

Plaintiffs argue that Proposed Intervenors—organizations representing poultry and cattle producers exposed to the very discrimination, deception, and retaliation that the Rule prohibits—do not have sufficient interest in upholding the Rule to justify intervention. This position borders on the absurd, and Government Defendants rightfully disagree. *See* Defs. Br. at 3. Plaintiffs also claim Farmer and Rancher Organizations lack standing. They are incorrect, but the Court need not address this argument at all because Proposed Intervenors do not need to establish standing now, and indeed may not need to at any point in the case.

Plaintiffs advance two inadequate interest theories. First, they urge that Farmer and Rancher Organizations have only offered "vague reference to a general desire for enhanced PSA protections" and that because Proposed Intervenors' conduct as organizations is not regulated by the Rule, they have no more than a "generic ideological interest" in this matter. Pls. Br. at 6–7. Second, they contend that neither Farmer and Ranchers Organizations nor their members "would be harmed if the Rule were declared unlawful." Pls. Br. at 6, 11. Both claims fall short.

On the first, Plaintiffs simply mischaracterize Farmer and Rancher Organizations' interests. They seek intervention to protect the interests of their members and constituents who are directly engaged in the livestock and poultry markets in which the Rule operates to protect—not just their interests as organizations per se. *See* Mot. at 11–12. While it is very true that the organizations, as organizations per se, have conducted decades of advocacy to secure better PSA protections, this work has always been done in service and for the benefit of their members and constituents. That

3

the Rule "does not involve the regulation of [the organizations'] conduct," Pls. Br. at 6, is irrelevant because Farmer and Ranchers Organizations' members are unambiguously the "intended beneficiaries of the challenged federal policy." *Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015). Farmer and Rancher Organizations' Motion and accompanying declarations make this clear. Mot. at 11–12; Arredondo Decl. ¶¶ 14–18; Bullard Decl. ¶¶ 11–17, 26–27; Buttram Decl. ¶¶ 5, 17–18; Kendall Decl. ¶¶ 9–16.

Plaintiffs cite to *Northland Family Planning Clinic, Inc. v. Cox* to support their claim that Farmer and Rancher Organizations have a purely ideological interest at stake, but that case is inapposite because there the proposed intervenor's members were not regulated or affected by the challenged statute. As *Northland Family Planning Clinic* made perfectly clear, "[t]o be sure, public interest groups . . . whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted." 487 F.3d 323, 345 (6th Cir. 2007).[1] Indeed, the Fifth Circuit has concluded the very same. *See Wal-Mart Stores Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016) (holding trade association's interests justified intervention where it sought to defend the regulatory scheme governing its members). Plaintiffs try to apply this mischaracterized case law to an argument Farmer and Rancher Organizations do not make; the Court should reject their arguments accordingly.

Plaintiffs' attempt to distinguish *City of Houston v. American Traffic Solutions, Inc.* by claiming that Proposed Intervenors "only submitted comments in favor of the Final Rule" is also plainly incorrect. Pls. Br. at 7. In addition to submitting detailed public comments on the

---

[1] Similarly, Plaintiffs cite to *Franciscan Alliance, Inc. v. Azar*, a case in which the court granted intervention as of right because those intervenors' members, just as Farmer and Rancher Organizations, "have an interest 'as the intended beneficiary of a government regulatory system[]'" and it rejected the very argument Plaintiffs make here. 414 F. Supp. 3d 928, 937 (N.D. Tex. 2019).

challenged Rule, they have been working for specific, enforceable protections under the PSA for decades. *See* Bullard Decl. ¶¶ 18–25; Buttram Decl. ¶ 6; Kendall Decl. ¶¶ 7–8. This has included extensive advocacy to USDA, numerous presidential administrations, and Congress. *Id.* And the Rule here reflects changes made in response to Farmer and Rancher Organizations' input. Mot. at 13. Thus, Farmer and Rancher Organizations are closely analogous to the intervenors in *City of Houston* who sought to protect their successful advocacy. 668 F.3d 291, 294 (5th Cir. 2012).

Second, Plaintiffs advance the strange argument that if the Rule were vacated, Farmer and Rancher Organizations' members and constituents would not be harmed because, they say, we only articulate "*competition*-based harms." Pls. Br. at 11. It appears Plaintiffs are referring to an aspect of their Complaint alleging the Rule impermissibly prohibits abusive conduct against farmers and ranchers without *also* requiring "a showing of actual or likely injury to competition." Complaint, Dkt. No. 1 ¶¶ 2, 5, 33. But they put forward a wildly expansive idea of "competition-based" harm untethered from the reality of the case.

For example, Plaintiffs argue that a statement observing cattle markets are "highly concentrated," which increases the threat of conduct that "deprives cattle feeders of the true and fair value of their cattle," means any resulting injuries are "competition-based" and thus unaffected by this litigation. Pls. Br. at 11 (citing Bullard Decl. ¶ 13). Not true. That market dynamics may enable the conduct does not also establish it will result in cognizable harm to competition more broadly. Furthermore, Farmer and Rancher Organizations aver their members have been subjected to specific abusive conduct causing *individualized* harm that the Rule protects against. *See* Mot. at 16–17; Bullard Decl. ¶¶ 14–16; Kendall Decl. ¶¶ 12–13; Arrendondo Decl. ¶¶ 14, 16; Buttram Decl. ¶¶ 11–16.

More importantly, the relief Plaintiffs seeks would make it harder for Farmer and Rancher Organizations' members to protect themselves from harmful discrimination, deception, and/or retaliation by *limiting the universe* in which they can pursue private enforcement of the Rule's protections, which is a harm in and of itself. *See* 7 U.S.C. § 209 (establishing a private right of action for damages). Whether or not their injuries are "competition-based" in no way alters that reality; their path to vindicating their rights will be more difficult if Plaintiffs prevail in this case. Obtaining the relief Plaintiffs seek would close the courthouse doors to a farmer or rancher without the resources to engage in complicated, expensive economic analyses to show that their individual harm *also* resulted in some formulation of broader competitive harm. Farmer and Rancher Organizations and their members clearly have a stake in this case that is "direct, substantial, [and] legally protected." *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022); *see also Wal-Mart*, 834 F.3d at 565 ("Rule 24 is to be liberally construed").

Lastly, Plaintiffs maintain that Proposed Intervenors "bear the burden of establishing associational standing" and have failed to do so. Pls. Br. at 10. As an initial matter, that analysis is wrong: this Court need not determine whether Farmer and Rancher Organizations have Article III standing at this juncture they raise no request for relief different than that of the existing parties.[2] *See* Defs. Br. at 4 (asserting they will defend the Rule should the Administration decide to retain it). For this reason, standing is unequivocally not a requirement Farmer and Rancher Organizations must satisfy at this stage of the case, nor an issue the Court must decide. *See Franciscan All., Inc.*, 414 F. Supp. 3d at n.3 (explaining that "because [proposed intervenors] do

---

[2] Plaintiffs misstate the law when they assert standing is required where "Proposed Intervenors' *interests* differ from the Government's." Pls. Br. at 9. (emphasis added). The operative question is whether intervenors seek different and unique *relief. See Town of Chester v. Laroe Ests., Inc.* 581 U.S. 433, 440 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.").

not 'seek relief' at this stage of the litigation, the Court need not address whether they have associational standing"). [3] And as Plaintiffs acknowledge, it is unclear whether intervenor-*defendants* ever need to establish Article III standing, as "the term 'relief' is linked to affirmative claims, not defenses." *Id.* (citing Black's Law Dictionary definition of "relief"). As in that case, Farmer and Ranchers Organizations raise no "counterclaim, cross-claim, or any other claim for relief. Rather, they state that their 'objective [is] defending the lawfulness of the regulation.'" *Id.* In sum, Farmer and Rancher Organizations have no burden to establish standing at this point in the case, if ever.

### III. Farmer and Rancher Organizations Have Satisfied the Inadequate Representation Standard Through Their Divergent Interests and Different Arguments

Plaintiffs and Government Defendants attempt to turn the inadequate representation test into an insurmountable obstacle by overstating the standard and misapplying this Circuit's two presumptions of adequacy. Intervenors "need not show that the representation by existing parties will be, for certain, inadequate," only that it "*may* be inadequate." *La Union del Pueblo Entero*, 29 F.4th at 307–08. The Fifth Circuit has reiterated time and again that this burden is "minimal." *See, e.g.*, *Edwards*, 78 F.3d at 1005; *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014); *Wal-Mart*, 834 F.3d at 569; *La Union del Pueblo Entero*, 29 F.4th at 308. Indeed, the only time this requirement has "teeth" is when one (or both) of the Circuit's presumptions of adequacy apply. *Brumfield*, 749 F.3d at 345. Here, the presumption regarding government representation certainly

---

[3] That said, Farmer and Rancher Organizations have Article III standing, and will demonstrate that should it become necessary. Farmer and Rancher Organizations and their members and constituents will suffer concrete and particularized harm from loss of a Rule designed to protect their members from abuse to which they are currently exposed. Motion at 16–17; *see Tex. Med. Ass'n v. U.S. Health & Hum. Servs.*, 110 F.4th 762, 773 (5th Cir. 2024) (explaining that when a party is "an object of a regulation," there is little question that the regulation's action or inaction "has caused him injury, and that a judgment preventing or requiring the action will redress it").

does not apply to the case at hand, and very likely neither does the presumption regarding shared objectives. But even if it does, Farmer and Rancher Organizations more than satisfy the burden necessary to overcome it.

Both Plaintiffs and Government Defendants ignore well-established precedent to argue that the first presumption of adequacy regarding government representatives applies here. However, "[t]his presumption, and the heightened showing required to overcome it, is restricted [] to those suits involving matters of sovereign interest," where the governmental body is "charged by law with representing the interests of the absentee." *Edwards*, 78 F.3d at 1005. In other words, this presumption applies in situations in which a sovereign state is a named party that is "presumed to represent the interests of all of its citizens." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994). Agency action, such as the rulemaking at issue here, does not trigger this presumption because this implicates merely "a government agency and not a sovereign interest." *Entergy Gulf States La., LLC v. U.S. EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016); *Doe #1 v. Glickman*, 256 F.3d 371, 380–81 (5th Cir. 2001) (finding same in suit against USDA). This is the case even where USDA seeks to defend the validity of a nationally applicable agency action. *See Miller v. Vilsack*, No. 21-11271, 2022 U.S. App. LEXIS 7563 at *6 n.4 (5th Cir. Mar. 22, 2022) (finding presumption inapplicable because USDA's administration of a congressionally authorized loan program, and the legality of its interpretation of that statutory mandate, were not matters of sovereign interest). This case involves such a situation and likewise does not implicate matters of sovereign interest. As such, this presumption does not apply and "a stronger showing of inadequacy is not required." *Entergy Gulf States La.*, 817 F.3d at 203 n.2.

Moving to the second presumption of adequacy, where would-be intervenors share the same ultimate objective as an existing party, the parties' principal argument seems to be that

because Government Defendants have not yet decided whether they will in fact defend the Rule, Farmer and Rancher Organizations cannot establish adversity of interest sufficient to overcome the presumption. *See* Pls. Br. at 9; Defs. Br. at 4. This line of attack confuses the standard. If Government Defendants decide not to "retain the Rule" and therefore not to defend it, a position they are admittedly considering, *see* Defs. Br. at 4, then they will not share the same objective as Farmer and Rancher Organizations who *are* seeking to defend the Rule. In that situation, the presumption clearly would not apply, and USDA's representation would be plainly inadequate. If and only if the Government chooses to fully defend the regulation must Farmer and Rancher Organizations then demonstrate "adversity of interest" in a manner "germane to the case" to overcome the presumption, *Texas*, 805 F.3d at 662, which they clearly do. *See* Mot. at 14–16.

For this reason, the parties' claim that a forthcoming decision not to defend the Rule is too speculative to overcome the presumption puts the cart before the horse. At this point—unlike in the cases they cite for the proposition that "speculation" cannot overcome the presumption of adequacy—Government Defendants have done nothing to actively defend the Rule or even show that is their objective. *See* Defs. Br. at 5. For instance, in *Louisiana v. Burgum*, though the Secretary of Interior had issued an order to "plan steps to 'suspend, revise, or rescind' the rule" at issue midway through the case, the agency continued to actively oppose Plaintiffs' challenge, demonstrating their ongoing, shared objective with would-be intervenors. No. 24-30658, 2025 U.S. App. LEXIS 7592, at *6–7, 9 (5th Cir. Apr. 1, 2025). And the proposed intervenor failed to "discuss any action taken by [the agency] that is adverse to its own interests." *Id*. at *9. Thus, Farmer and Rancher Organizations' demonstration of adversity is much more akin to the *Trbovich v. United Mine Workers of America* and *Sierra Club v. Espy* intervenors. *See id*. at *8–*9

(discussing these two cases); *see also* Mot. at 14 and *infra* (outlining how adverse and divergent interests have a concrete impact on the litigation).

Likewise, in *League of United Latin American Citizens v. Wilson* ("*LULAC*"), where the government had been "'vigorously and professionally' defending the [challenged] initiative," a situation in which the presumption clearly applied, the Ninth Circuit found it too speculative to argue that a future, yet-to-be elected administration might do otherwise. 131 F.3d 1297, 1306 (9th Cir. 1997). Government Defendants have done nothing to defend the Rule, vigorously or otherwise. Instead, their first telling action in this case was to secure a stay expressly for the purpose of contemplating whether they will defend the Rule at all. In any event, this speculation complaint is a manufactured problem of the existing parties' own making. They asked the Court to stay case proceedings and put off any future status reports that would shed light on Government Defendants' position until *after* this Motion to Intervene is ruled upon. *See* Joint Status Report, Dkt. No. 42. Doing so conveniently keeps the "speculation" alive. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) ("doubts [are to be] resolved in favor of proposed intervenors").

Where courts have been truly unable to determine inadequacy, they commonly reserve judgment on intervention motions where the government's representation may turn inadequate until those actions materialize. *See, e.g.*, *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers*, 101 F.3d 503, 509 (7th Cir. 1996) (finding "the proper way to handle such an eventuality . . . is to file a standby or conditional application for leave to intervene and ask the district court to defer consideration of the question of adequacy of representation until the applicant is prepared to demonstrate inadequacy."). In this case, however, deferring consideration is unnecessary because even if Government Defendants ultimately decide to defend the Rule, sufficient diverging and adverse interests exist to overcome the presumption of adequate

representation. As Government Defendants acknowledge, *see* Defs. Br. at 6, "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments" establishes inadequate representation. *Texas*, 805 F.3d at 663 (quoting *Brumfield*, 749 F.3d at 346). First, Government Defendants themselves have established their diverging interest by conforming their litigation strategy to new policy directives to which Farmer and Rancher Organizations are not bound. Second, their opposition brief confirms their defense would focus only on the Agency's statutory authority, *see* Defs. Br. at 4, whereas Farmer and Rancher Organizations will present additional arguments. Third, the divergent legal position the prior Trump Administration advanced regarding USDA's authority under the Packers and Stockyards Act belies the Government's intention and ability to effectively raise its intended defense now.

The Government Defendants' February 10 stay request, Defs. Consent Mot., Dkt. No. 32, demonstrates their unique interest in conforming any litigating position they take in this case with the Executive Order to eliminate so-called "illegal and immoral discrimination programs" enacted by the previous administration. Executive Order 14151, Sec. 1; *see also id.* at sec. 2(b)(iii)(B). Farmer and Rancher Organizations do not share this interest, nor do they believe that the Rule even falls within the Executive Order's scope. Protecting American farmers and ranchers from patently harmful and abusive practices, including discrimination, retaliation, and deception, as the Packers and Stockyards Act requires, is the opposite of illegal or immoral. What is more, Farmer and Rancher Organizations have no need and are not required to align their position in this case with *any* new policy directives currently constraining USDA or the Department of Justice. Consequently, their legal arguments will not be limited by this or any other executive instruction as the Government Defendants will be. While "[w]e cannot say for sure that the [Government's] more extensive interests will *in fact* result in inadequate representation," that is not the standard

11

that Farmer and Rancher Organizations must satisfy to overcome the presumption. *Brumfield*, 749 F.3d at 346 (emphasis in original). It is enough that "surely, they might, which is all the rule requires." *Id.*

Moreover, Government Defendants' opposition brief demonstrates that Farmer and Rancher Organizations will be advancing different and additional legal arguments in defense of the Rule, establishing further grounds for inadequacy. If the Agency decides to retain and defend the Rule, it asserts its interest in the case and accordingly its legal argument will focus on "establishing that the agency had the requisite statutory authority" to promulgate the Rule. Defs. Br. at 4. Though Government Defendants are correct that Farmer and Rancher Organizations share in that pursuit, Farmer and Rancher Organizations will also advance additional arguments, as shown by their Proposed Answer. Dkt. No. 38-1. For instance, Farmer and Rancher Organizations intend to argue that this Court lacks jurisdiction to hear Plaintiffs' claims, that Plaintiffs have not filed the case in a proper venue, and that their claims are barred by an applicable statute of limitations. *See* Proposed Answer at ¶¶ 14–15, and Affirmative Defenses 1, 2, and 4. By raising threshold arguments that Government Defendants have no apparent intention of pursuing, Farmer and Rancher Organizations "are staking out a position significantly different from that of the [Agency], which apparently has conceded the continuing jurisdiction of the district court." *Brumfield*, 749 F.3d at 346. Just as the Fifth Circuit held in *Brumfield*, this significant difference in legal arguments overcomes the presumption of adequacy.

Finally, even where Farmer and Rancher Organizations and Government Defendants may seemingly agree—that USDA has the statutory authority to enact the regulation—the administration's past adverse legal views on this front call this alignment into question. Plaintiffs and Government Defendants complain that "historical differences" Farmer and Rancher

Organizations have had with the Agency should have no bearing on the case at hand. *See* Pls. Br. at 9; Defs. Br. at 6–7. That is simply wrong when the differences in question have "concrete effects on the litigation." *See Texas*, 805 F.3d at 662. Such is the case here.

Farmer and Rancher Organizations are not raising abstract policy disagreements they have had with USDA on unrelated matters, but rather examples of their direct opposition to the *legal* position taken by the first Trump Administration regarding similar Packers and Stockyard Act rules. *Cf. LULAC,* 131 F.3d at 1307 (finding only positions of an unknown future administration too speculative). In 2017, the Agency withdrew an interim final rule eliminating the need for producers to prove harm to competition in addition to individual harm (as this Rule does for certain proscribed conduct). It cited "serious legal and policy concerns related to its promulgation and implementation," which included the Agency's belief that the rule would not be entitled to judicial deference. *See* 82 Fed Reg. 48,594, 48,596 (Oct. 18, 2017). Similarly, the Agency decided not to finalize a proposed rule that would have clarified what conduct constitutes unfair, unjustly discriminatory, and deceptive actions in violation of the Act (as this Rule does), citing the same deference concerns it identified in its withdrawal of the "closely relate[d]" interim final rule. *See* 82 Fed. Reg. 48,603 (Oct. 18, 2017). Government Defendants have given no indication whatsoever that they have departed from these legal positions, leaving Proposed Intervenors with no confidence in Government Defendants' ability to effectively argue for the true and full reach of the Packers and Stockyards Act to protect farmers and ranchers. In sum, Government Defendants may not adequately represent Farmer and Ranchers Organizations' interests, and the Organizations have established their right to intervene.[4]

---

[4] The Court should disregard Government Defendants' argument that intervention by right is not warranted where parties can "protect [their] interests . . . through some other means," Defs. Br. at 7, because that consideration is irrelevant to intervention by right and is otherwise inapplicable.

## IV. The Parties' Arguments Against Permissive Intervention Also Fail

Beyond reiterating their intervention as of right points, the only real argument either side makes in opposition to permissive intervention is that "interfering with the Department of Justice's control of government litigation" would prejudice Government Defendants. Not only does this argument lack support, but it also fails to persuade given the obvious injustice that would result from leaving out the very farmers and ranchers this Rule is designed to protect, particularly given the Government's equivocation on whether defending this Rule is even in USDA's interests.

None of the authorities cited by Government Defendants support their contention that a government interest in controlling litigation can come close to outweighing the substantial prejudice that Farmer and Rancher Organizations and their members and constituents would suffer if denied intervention. For instance, they argue that federal law establishes that the Attorney General—and not private entities—is alone empowered to control litigation in which the Government is involved, *see* Defs. Br. at 8 (citing 28 U.S.C. § 516), but that statute merely establishes that the Department of Justice—and not other *agencies*—runs point on Government involvement in litigation. It has no bearing on whether intervenors can also participate in lawsuits, as Rule 24 clearly entitles them. Likewise, 28 C.F.R. § 0.20(b) says who in the federal bureaucracy has the power to make appeal decisions on behalf of the United States, not whether intervenors should be barred from making their own appeal decision when the Government has declined.

---

The case Government Defendants cite deals only with permissive intervention, where the would-be intervenors had no interests at stake in the case and only wished "to gain access to documents and testimony" for use in their own lawsuit against the defendant. *Dues v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994). Such is not the case at hand. Moreover, even if this argument were relevant, that Farmer and Rancher Organizations would have an actual opportunity to engage in a future rulemaking process is doubtful given the Agency is under orders to bypass public process requirements when repealing regulations. *See* Presidential Memoranda, *Directing the Repeal of Unlawful Regulations* (Apr. 9, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/directing-the-repeal-of-unlawful-regulations/.

The cases the Government cites are also inapposite. *United States v. Associated Milk Producers, Inc.* involved a private company's intervention into an antitrust enforcement action brought against one of its competitors that was near settlement, a situation particular to antitrust jurisprudence subject to a much higher intervention standard. *See* 534 F.2d 113, 117 (8th Cir. 1976). In *Saldano v. Roach*, the Fifth Circuit denied a district attorney's attempted intervention into a federal habeas proceeding in which the State Attorney General assumed representation pursuant to State law, finding that the State of Texas, as the "real party in interest" could not be represented by multiple advocates raising contradictory arguments. 363 F.3d 545, 551 (5th Cir. 2004). *See also New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 473 (5th Cir. 1984) (considering the impact "full party rights" might have on original party control only where proposed intervenors had no legally sufficient interest in the case and had failed to establish inadequate representation).

Farmer and Rancher Organizations have a substantial stake in this case: their members stand to lose vital protections safeguarding their farming and ranching operations and livelihoods. These Organizations have decades of real-world experience with the issues underlying this challenge, making them valuable additions to these proceedings. *Cf.* Pls. Br. at 12; Defs. Br. at 9. More importantly, they are the only parties committing to launch a vigorous and comprehensive legal defense of the Rule. As such, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons and those laid out in their Motion to Intervene, Farmer and Rancher Organizations have established their right to intervene under Rule 24(a), or, in the alternative, should be granted permissive intervention under Rule 24(b).

//

15

Dated: May 2, 2025

Respectfully Submitted,

/s/ *Tyler Lobdell*
Tyler Lobdell, *Attorney-in-Charge*
Idaho Bar No. 10431
Emily Miller
CA Bar No. 336417
Food & Water Watch
1616 P Street, NW Suite 300
Washington D.C. 20036
T: (202) 683-2500
tlobdell@fwwatch.org
eamiller@fwwatch.org

/s/ *Q. Tate Williams*
Q. Tate Williams
TBN:  24013760
Stephanie K. McGuire
TBN:  11100520
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, TX 77006
T: (713) 804-8038
tate@hilderlaw.com
stephanie@hilderlaw.com

*Counsel for Defendant-Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2025, I electronically filed the foregoing document entitled Farmer and Rancher Organizations' Reply in Support of Motion to Intervene as Defendants. Copies will be served upon counsel of record, and may be obtained through, the Court's CM/ECF system.

*/s/ Tyler Lobdell*